COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

EL APPLE I, LTD., § 

§ No. 08-07-00257-CV

Appellant, §

Appeal from the

v. §

County Court at Law No. 3

§

MYRIAM OLIVAS, § of El Paso County, Texas

§

Appellee. § (TC# 2003-4899)

§

# **O P I N I O N**

This is an employment discrimination and retaliation case. El Apple I, Ltd. appeals from a judgment in favor of its employee, Myriam Olivas. A jury determined Ms. Olivas was the target of illegal retaliatory conduct following her filing of sex discrimination charges against her employer, and awarded her $104,700 in compensatory damages and back pay. The trial court awarded Ms. Olivas $464,000 in attorney's fees, and added conditional attorney's fee awards for post-judgment and appellate proceedings. El Apple raises four issues challenging: the sufficiency of the evidence supporting the jury's retaliation finding; the jury's award of $1,700 for "back-pay;" the trial court's admission of evidence of discrimination of other employees; and several aspects of the attorney's fee award. We affirm as reformed.

Myriam Olivas began working for El Apple I, Ltd., as an assistant manager in one of the company's Applebee's restaurants on August 4, 2001. In October 2001, after completing training at El Apple's Yarborough location, Ms. Olivas was assigned to the Applebee's on George Dieter. During her training, one of Ms. Olivas' supervisors was the Yarborough

restaurant's general manager, Mr. Alex Aguirre. At the George Dieter restaurant, Ms. Olivas'

supervisor was Mr. Freddy Hernandez. In May 2002, Mr. Hernandez began talking to Ms. Olivas

about a possible promotion, and Ms. Olivas began training as an assistant general manager.

In July 2002, Ms. Olivas learned she was pregnant with her first child. She informed

Mr. Hernandez about her condition early in August. Over the next few weeks, Ms. Olivas

continued to maintain her work schedule which could be up to seventy-five hours per week. On

August 7, 2002, Ms. Olivas left her shift at the restaurant and was admitted to the hospital for a

possible miscarriage. She notified the restaurant, through another manager, that she would not be

able to work her shift on the 8th. Mr. Hernandez left several messages on Ms. Olivas' voicemail

indicating his concern that Ms. Olivas was missing her shift that evening. When Ms. Olivas

returned to work on the 9th, Mr. Hernandez asked her if she intended to stay with the company

through the rest of her pregnancy. Ms. Olivas explained that she intended to keep working, and

that she had an appointment to see her doctor to discuss her ongoing symptoms in September. At

her appointment, Ms. Olivas' doctor voiced some concerns about fluctuations in Ms. Olivas'

blood pressure, but did not put her on any work restrictions. When Ms. Olivas reported back to

Mr. Hernandez following her appointment, he informed her that she would need documentation

releasing her to work after every appointment for the duration of her pregnancy. There was

never any more talk about Ms. Olivas' promotion after her hospitalization.

When Ms. Olivas returned to her doctor in October, they discussed her work schedule and

requirements. When she told the doctor she was working up to seventy-five hours per weeks, she

expressed concerns about Ms. Olivas not getting enough rest, and restricted her to a forty-hour

work week. Ms. Olivas reported the doctor's restriction to Mr. Hernandez, who spoke to

Applebee's director of operations, Mr. Butch Gore. Because of her hourly restrictions, the company cut Ms. Olivas' salary by approximately $120 per pay period, a one-fifth reduction. Ms. Olivas contacted Ms. Bea Martinez, the company's contact person for human resource issues, to complain about the pay reduction. Ms. Martinez informed Ms. Olivas that there was no written company policy requiring managers to work fifty or more hours per week to receive a full salary.

Ms. Olivas' schedule continued to be more than forty hours per week, but she was working less hours than she had prior to her pregnancy. When her paycheck continued to reflect a one-fifth pay cut she called Ms. Martinez a second time. Again, Ms. Martinez indicated that the company did not have a written policy requiring managers to work over fifty hours per week to receive their full salaries. Ms. Martinez informed Ms. Olivas that if she felt she was being discriminated against, she could contact the Texas Workforce Commission or the Equal Employment Opportunity Commission and file a complaint. Ms. Olivas filed her first complaint with the Texas Human Rights Commission and the EEOC on November 19, 2002, charging her employer with discrimination based on her sex and because of her pregnancy.

From November 2002 until March 2003, just before the end of her pregnancy, Ms. Olivas was often scheduled for closing shifts, which required her to be at work from late afternoon until between midnight and three a.m. During November and December, Ms. Olivas was scheduled to close more often than any other manager at the George Dieter restaurant. On several occasions, she was scheduled to work more than forty hours per week, and on other occasions, although she was scheduled for less than forty hours, the closing shifts required her to work beyond the hours scheduled.

During the week of November 11 through December 8, 2002, Ms. Olivas worked forty-eight hours, in part because she was called in to cover shifts for Mr. Hernandez who took time off to care for his wife who had suffered a miscarriage. On December 11, Ms. Olivas worked her third closing shift in as many days, pursuant to her schedule. The next week, Mr. Hernandez issued a written employee warning to Ms. Olivas, alleging that she did not perform a safety check in the kitchen to make sure the pilot lights on the stove were turned off, and as a result the entire restaurant smelled like gas the next morning. The warning also reported that at the end of the night, the kitchen was not cleaned satisfactorily, and that trash was not emptied properly. Ms. Olivas filed her second discrimination complaint to the Texas Human Rights Commission and the EEOC on March 27, 2003. In the second complaint, Ms. Olivas alleged her employer had retaliated following the first complaint by scheduling her to work more than forty hours per week despite her doctor's orders, by cutting her salary, and by singling her our for disciplinary action.

In March 2003, Ms. Olivas began nine-weeks of maternity leave and returned to work in May 2003. When she called Mr. Hernandez to ask to be put back on the schedule, he informed her that she would be working at the restaurant at the intersection of Yarborough and Interstate 10. Mr. Aguirre was Ms. Olivas' supervisor at the Yarborough location. Initially, she was assigned to work exclusively in the kitchen and was scheduled to open the restaurant. One of the responsibilities of the opening manager is to do a "freezer-pull," which requires the assigned manager to pull all of the day's supplies and move them into the cooler or other areas in the kitchen. While she was performing this task, Ms. Olivas experienced sharp pains in her breasts

-4-

on two occasions.[1]  After she reported the pain to her doctor, the doctor faxed El Apple a note prohibiting Ms. Olivas from working in the freezer.  The following day, she was scheduled for more work in the freezer, but when she approached her supervisor about her doctor's restrictions, another manager informed her that the company had contacted the physician and that Ms. Olivas was now only restricted from being in the freezer for more than three to five minutes, and was required to wear a jacket.  El Apple did not have Ms. Olivas' permission to contact her doctor.

Ms. Olivas continued to work exclusively in the restaurant's kitchen for the next three months.  None of the other managers were specifically assigned to the kitchen, or any other area in the restaurant.  When she complained about being prohibited from the front of the restaurant, Mr. Aguirre told Ms. Olivas that she was too negative, and did not have a proper rapport with the other employees or customers to work outside the kitchen.  When Mr. Aguirre was promoted to Area Director, and Mr. Hernandez took his place as general manager at the Yarborough location, Ms. Olivas began being assigned to duties outside the kitchen.  Still, whenever Mr. Aguirre visited the store, Ms. Olivas would be ordered back to the kitchen despite her assigned location for the shift.  Ms. Olivas filed her third discrimination complaint on June 25, 2003, alleging that by excluding her from all areas of the restaurant but the kitchen, and that by contacting her doctor about her breast pain without her permission, her employer and supervisors continued to retaliate against her for her previous reports.

Between May and October 2003, Ms. Olivas worked in what she described as a "hostile" environment at Applebee's.  She felt that her superiors worked insidiously to undermine her capabilities to the staff and that she had been singled out for reprimands on occasions when she

---

[1] Ms. Olivas was breast-feeding her baby at this time.

had not done anything wrong. On November 1, 2003, Mr. Hernandez issued a written warning against Ms. Olivas, indicating she was being sent home without pay because she had approached another manager, who was in the restaurant as a customer with family members, about her ongoing issues with her supervisors. When Mr. Aguirre and Mr. Hernandez approached Ms. Olivas with the write-up about the incident, she refused to sign the document. After she refused to sign the first reprimand, Mr. Hernandez wrote her up a second time for refusing to sign the first reprimand. When Ms. Olivas refused to sign the second reprimand, Mr. Aguirre escorted her out of the building. Ms. Olivas filed her fourth, and final, discrimination charge on November 4, 2003, claiming that she had been disciplined and threatened with termination, in retaliation for her previous discrimination charges.

Ms. Olivas filed her original petition alleging sex discrimination and retaliation on November 7, 2003. The case was tried to a jury from October 23 to October 30, 2006. The jury determined Ms. Olivas was not the target of discrimination based on her sex. However, the jury agreed with Ms. Olivas that her decision to file discrimination complaints against her employer was a motivating factor in El Apple's creation of a hostile work environment. Based on the retaliation finding, the jury awarded, $1,700 for wages Ms. Olivas would have been paid absent the retaliatory actions, $75,000 in compensatory damages for past non-economic damages, and $28,000 for future compensation for continuing non-economic damages. Ms. Olivas has continued to work for El Apple as an Applebee's manager throughout the litigation.

The trial court entered its written judgment on June 14, 2007. The court awarded damages pursuant to the jury's verdict, prejudgment interest in the amount of $20,196.79, plus $17.33 per day as post-judgment interest between December 11, 2006, and the date of the

judgment. El Apple was also ordered to pay Ms. Olivas $464,000 for attorney's fees related to the trial. The court also made conditional awards of $9,000, $50,000, $16,000, and $24,000, respectively, for costs associated with a the filing of any post-judgment motions, an appeal to the intermediate court of appeals, a petition for discretionary review, and an appeal in the Texas Supreme Court should a petition for discretionary review be granted. El Apple filed a motion for new trial on July 6, 2007, and its notice of appeal September 7, 2007.

In Issue One, El Apple contends the evidence is legally insufficient to support the jury's determination that Ms. Olivas was retaliated against for filing discrimination charges. A legal sufficiency challenge can be sustained if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vial fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

When conducting our review, we consider the evidence in the light most favorable to the verdict and induce every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822. Even if evidence is undisputed, we will not disturb the inferences drawn by the trier of fact, as long as more than one inference is possible. *Id.* at 821. However, if the evidence allows only one inference, neither the trier of fact nor the reviewing court is permitted to disregard it. *City of Keller*, 168 S.W.3d at 821. We are also mindful that the trier of fact is the sole judge of witness credibility and the weight to be given witness testimony. *Id*. at 819. When the record contains conflicting evidence, it is the province of the trier of fact to resolve those conflicts. *Id*. at 820. In every circumstance where a reasonable fact finder could resolve conflicting evidence

either way, the reviewing court must presume it did so in favor of the prevailing party, and must disregard the contrary evidence in its review. *Id*. at 821. So long as the evidence falls within the zone of reasonable disagreement we may not substitute our judgment for that of the trier of fact. *Id*. at 822. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827.

El Apple argues there is no evidence to support the jury's retaliation finding because the alleged retaliatory actions Ms. Olivas points to as the basis for her claim do not constitute "adverse employment actions" as defined by the United States Supreme Court in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). El Apple also contends there is no evidence of a causal connection between Ms. Olivas filing a discrimination claim, and the alleged retaliatory actions.

As a preliminary matter, however, we must consider how the jury was, or should have been, asked to determine the challenged issue. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005). This inquiry is key to a sufficiency analysis because when a complaining party fails to object to the way an issue is submitted to the jury, we must review the jury's finding in light of the charge as submitted, even if the submission was an inaccurate statement of the law. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000). When the complaining party properly objects, however, we must first determine how the issues should have been submitted, and then review the evidence in light of the charge as it should have been submitted. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002).

Ms. Olivas' retaliation claim was submitted in Question Three of the court's charge. Question Three asked:

Was *Myriam Olivas' making or filing a charge of discrimination or filing a complaint* a motivating factor in *El Apple I, Ltd's* creating a hostile work environment, if any?

A hostile work environment requires the presence of a work environment that a reasonable person would find hostile or abusive. Whether an environment is hostile or abusive depends on the totality of the circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

A 'motivating factor' in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

During the charge conference, El Apple presented the *White* case to the trial court in support of its argument that the evidence of El Apple's actions following Ms. Olivas' discrimination report did not rise to the level of an actionable claim for retaliation. In *White*, the Supreme Court stated that an adverse employment action short of termination supports a claim for retaliation if a reasonable employee would have found the challenged action materially adverse. *White*, 548 U.S. at 68, 126 S.Ct. at 2415. In the retaliation context specifically, a "materially adverse" employment action is one that might have dissuaded a reasonable employee from making or supporting a discrimination charge. *Id*.

The jury here was not instructed to consider the evidence of El Apple's alleged retaliatory actions in light of the standard articulated in *White*. Therefore, before we may review the sufficiency of the evidence in light of a standard on which the jury was not instructed, we must determine whether El Apple lodged a proper objection to the court's definition. *See Wolff*, 94 S.W.3d at 530. Texas Rules of Civil Procedure 274 states:

A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint to a question, definition, or

instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

TEX.R.CIV.P. 274; *see also* TEX.R.CIV.P. 272.

El Apple objected to the submission of the entirety of Question Three on the basis that there was no evidence to support its inclusion in the charge in light of the standard articulated in *White*. El Apple did not object to the statement of the law contained in Question Three's definitions, nor did the company argue that the definition, as worded, presented an inaccurate statement of the law.[2] Accordingly, El Apple failed to preserve the question of the proper standard for measuring actionable retaliatory conduct for review, and we must review the sufficiency of the evidence in light of the question and definition provided to the jury, without regard to the legality of the definition. *See Equistar Chem., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007); *Zimlich*, 29 S.W.3d at 71.

Ms. Olivas testified extensively regarding the treatment she received at the restaurant through the actions taken by her supervisors and other individuals at El Apple. She testified that Mr. Aguirre undermined her authority to manange other staff members, which made it difficult to perform her job. She testified that she felt she was singled out for reprimands, and was held to a different standard of performance than other staff members. Despite her doctor's orders, she was

---

[2] In its reply brief, El Apple argues, for the first time, that the issue of whether or not a particular employment action rises to the level of a potential claim for retaliation is a question of law, and therefore is not an issue for a jury to determine. *See Montgomery County v. Park*, 246 S.W.3d 610, 615 (Tex. 2007). As this issue was not included in El Apple's Appellant's brief, it has not been properly raised for appellate review. *See* TEX.R.APP.P. 38.1, 38.3; *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex.App.--Austin 2004, pet. denied). In addition, we express no opinion on this argument as El Apple also failed to object to the court's charge on the this basis, and so the issue has not been preserved for our review. *See* TEX.R.APP.P. 33.1(a); *Equistar Chem.*, 240 S.W.3d at 868.

required to work more than forty hours per week. El Apple interfered with her medical restrictions by contacting her doctor without her permission to alter the physician's recommendation regarding Ms. Olivas' physical limitations following her pregnancy. After she was limited to minimal physical exertion by her doctor, she was restricted almost exclusively to the restaurant kitchen for several months. She was the only manager on staff who was prohibited from working in the front of the restaurant. She was also scheduled to work a significantly higher number of closing shifts than other managers.

Viewing the evidence in a light most favorable to the verdict, we conclude there is more than a scintilla of evidence which would allow reasonably minded jurors to determine Ms. Olivas was subjected to a hostile work environment as a result of her decision to file discrimination charges against her employer. As such, the evidence is legally sufficient to support the jury's answer to Question Three, and Issue One is overruled.

In Issue Two, El Apple asserts the jury's $1,700 in back pay award must be reversed. El Apple's arguments on this point are premised on the fact that during closing arguments, Ms. Olivas' attorney asked the jury to award $1,680 to compensate Ms. Olivas for a salary reduction during her second pregnancy in 2005. Ms. Olivas does not cite to any other point in the record where there was evidence of a nearly $1,700 reduction in salary, and we have been unable to locate any other evidence in the record to support the jury's award in this instance.

First, El Apple argues this particular damage award must be reversed because Ms. Olivas' discrimination charges did not include a retaliation claim related to her second pregnancy. Second, El Apple argues there is no evidence of a causal connection between El Apple's alleged discrimination or retaliation and the salary reduction during Ms. Olivas' second pregnancy.

As Ms. Olivas points out, El Apple failed to present either of the arguments now raised in Issue Two to the trial court. Generally, failure to make a timely and specific objection to the trial court results in waiver of an issue on appeal. *See* TEX.R.APP.P. 33.1(a). However, in rare instances where the record demonstrates a jurisdictional defect, or other type of "fundamental error," timely objection is not necessary as the issue may be raised for the first time on appeal. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). In its first, argument under Issue Two, El Apple contends Ms. Olivas was not entitled to back pay damages related to her second pregnancy because, her EEOC and Texas Human Rights Commission charges did not include allegations of discrimination or retaliation beyond her first pregnancy. Under this Court's decision in *El Paso County v. Navarrete*, this argument presents a challenge to the trial court's jurisdiction to consider this limited issue. 194 S.W.3d 677, 683-84 (Tex.App.--El Paso 2006, pet. denied).

The Texas Commission on Human Rights Act, contained in Chapter 21 of the Texas Labor Code, maintains a comprehensive administrative review system for obtaining relief from unlawful employment practices. *See Navarrete*, 194 S.W.3d at 683. Prior to filing suit in state court, an employee must exhaust her administrative remedies under the act by first filing a complaint with the TCHR. *Id*. This affords the Commission an opportunity to investigate the allegation, informally eliminate any discrimination, and minimize costly litigation. *Id*. A claimant's failure to satisfy the administrative requirements deprives the court of subject matter jurisdiction. *Navarrete*, 194 S.W.3d at 683. Unless an employee submits her complaint to the TCHR, the courts of Texas are barred from adjudicating the complaint. *Id*. at 683. Any lawsuit brought under the act is further limited to claims made in the discrimination complaint, and any

factually related claims that could reasonably be expected to grow out of the Commission's investigation of the charge. *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex.App.--Houston [14th Dist.] 1999, no pet.).

Ms. Olivas' four employment discrimination charges were filed on November 19, 2002, March 27, 2003, June 25, 2003, and November 4, 2003, respectively. Ms. Olivas became pregnant with her first child in July of 2002. She became pregnant with her second child in September of 2004, and continued to work for El Apple as a restaurant manger throughout the second pregnancy. She ended her second maternity leave at the end of June 2005, and returned to work as a manager for El Apple. Ms. Olivas' charges to the TCHR and EEOC predated her second pregnancy by twenty-two months. There is no mention of allegedly discriminatory or retaliatory practices related to the second pregnancy in the charges, and such retaliation charges could not be expected to grow out of Ms. Olivas' original filings. As such, we conclude Ms. Olivas failed to exhaust her administrative remedies with respect to any claims for discrimination or retaliation arising out of her second pregnancy and therefore, was precluded from raising them within this proceeding. Accordingly, the trial court lacked jurisdiction to consider, or award damages for such a claim. *See Navarrete*, 194 S.W.3d at 684. Similarly, without addressing the sufficiency of the evidence to support the jury's award we sustain Issue Two, and we will reform the judgment to omit the award for back pay damages as well as the associated prejudgment interest.

In Issue Three, El Apple contends the trial court erroneously admitted evidence of unrelated acts of alleged discrimination against other female employees. The admission or exclusion of evidence is committed to the trial court's discretion. *See City of Brownsville v.*

-13-

*Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). As such, a reviewing court cannot sustain an issue challenging the admission or exclusion of evidence absent an abuse of discretion. *See Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). In addition, evidentiary error only rises to the level of reversible error if the error probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting the case to the court of appeals. *See* TEX.R.APP.P. 44.1(a). A successful challenge to an evidentiary ruling usually requires the complaining party to demonstrate that the judgment turns on the particular evidence admitted or excluded. *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 499 (Tex.App.--Fort Worth 2001, pet. denied).

Even if we were to agree, for the sake of argument, that the evidence El Apple challenges was erroneously admitted, we fail to see how El Apple was harmed by that admission. As we understand El Apple's argument, the company contends it was harmed by the admission of this evidence because it permitted plaintiff's counsel to use the evidence to create an impression that there was a general pattern of discriminatory behavior focused on female employees, and that El Apple, as a company, cultivated a culture of sex based discrimination during closing argument. The jury, however, was not persuaded by Ms. Olivas' argument, and found against her regarding El Apple's liability for sex discrimination. El Apple makes no argument that the challenged evidence influenced the jury's verdict on Ms. Olivas' retaliation claim, and we decline to speculate as to whether it is relevant to that inquiry. Accordingly, El Apple cannot demonstrate that admission was harmful under the standards set forth in Texas Rule of Appellate Procedure 44.1(a), and we overrule Issue Three.

In Issue Four, El Apple challenges the attorney's fees and costs awards on four grounds.

-14-

First, El Apple argues there is no evidentiary basis from which the trial court could have determined the number of hours Ms. Olivas' attorneys claimed to have expended representing her were reasonable. Second, El Apple asserts there was no evidence to support the trial court's determination of a reasonable hourly rate to be attributed to Ms. Olivas' counsel's work on the case, nor that the amount the court set was representative of the rates charged by similarly experienced lawyers in El Paso. Third, El Apple contends the trial court improperly enhanced Ms. Olivas' attorney's fee award because there was no evidence to support such enhancement. In its fourth, and final argument, El Apple contends the trial court's conditional award of attorney's fees for potential post-judgment and appellate proceedings was speculative, and therefore made in error.

An attorney's fees award rests in the sound discretion of the trial court. *Cordova v. Southwestern Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 445-46 (Tex.App.--El Paso 2004, no pet.). Therefore, although the appropriate standard of review is generally abuse of discretion, we may also review an attorney's fees award for sufficiency of the evidence. *Id*. at 446. This hybrid analysis results in a two-pronged inquiry: (1) did the trial court have sufficient evidence before it to properly exercise its discretion; and if so, (2) did the court err in the application of its discretion? *Id*. The reviewing court employs a traditional sufficiency review under the first prong, and then, if sufficient evidence appears in the record, we must determine whether the trial court's decision falls within the bounds of its discretionary authority. *See Cordova*, 148 S.W.3d at 446. That is, should we reach the second inquiry, the trial court's decision will only be reversed if it was arbitrary or unreasonable. *See id*.

In an employment discrimination case, attorney's fees are authorized by Section 21.259 of

-15-

the Texas Labor Code. A trial court may allow the prevailing party to recover reasonable attorney's fees as part of the costs of pursuing the claim. *See* TEX.LAB.CODE ANN. § 21.259(a) (Vernon 2006). In this case the trial court used the "lodestar" method to determine a reasonable fee amount. A "lodestar" calculation requires the court to determine how many hours were reasonably spent on the matter, and then to multiply those hours by a reasonable hourly rate. *Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex.App.--El Paso 2002, pet. denied). The "lodestar" figure can then be adjusted according to the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Gonzales*, 72 S.W.3d at 412. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the level of skill involved; (4) the effect on other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases. *Gonzales*, 72 S.W.3d at 412, *citing Johnson*, 488 F.2d at 717-19. If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments. *Gonzales*, 72 S.W.3d at 412.

All four of the grounds El Apple asserts in Issue Four, focus on the first prong of the hybrid standard of review. In essence, El Apple argues by awarding the attorney's fees it did, the trial court abused its discretion because there was no evidence upon which the trial court could properly exercise its discretion. As we discussed in Issue One, a legal sufficiency review requires us to examine all the evidence in a light most favorable to the verdict. *City of Keller*,

-16-

168 S.W.3d at 822.  The ultimate inquiry is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.  *Id*. at 827.

Ms. Olivas filed her application for attorney's fees and costs pursuant to Section 21.259 on December 4, 2006.  The motion was supported by two separately filed affidavits by Ms. Olivas' trial counsel; Daniel Gonzalez and Francisco Dominguez.  According to Mr. Gonzales's affidavit, over the course of five years he invested over seven hundred hours in the case, including Ms. Olivas' four discrimination claims and trial.  He indicated that $300 per hour was within the range of fees "customarily charged in El Paso County for similar legal services, for lawyers with similar experience," and added that $200 per hour was within the appropriate range of fees for his co-counsel.  Counsel attributed the number of hours expended on the case to the number of discovery instruments and pleadings, the number of depositions and witness interviews, as well as the skill with which defense counsel defended its client prior to, and during trial.  Counsel also testified that he did not seek assistance from co-counsel until such assistance was necessary prior to trial.  The affidavit indicates co-counsel and Mr. Domginguez, expended 190 hours preparing for, and trying the case.  Mr. Gonzales indicated that both attorney's time was reasonable and necessary given the nature of the case, and the result obtained.  Mr. Dominguez testified that like Mr. Gonzalez, he refrained from taking additional clients in order to dedicate the time necessary to properly represent Ms. Olivas.

Both lawyers addressed several more *Johnson* factors in addition to the time required to handle the case.  Both lawyers testified El Apple defended the case vigorously and that the risk involved pursuing the claim was increased due to it being of a contingent nature.  Both lawyers also testified regarding the undesireablity of the case given the difficulty in establishing an

employer's intent in a discrimination case, the complexity of the law in this area, and the limited number of attorneys who are available to handle employment discrimination cases for El Paso plaintiffs. Finally, both affidavits provided an extensive list of similar awards in similar cases.

El Apple argues, in part, that without detailed billing records, and in light of its own trial attorney's testimony that the case only required approximately 266 hours of attorney time, there is legally insufficient evidence to support the trial court's determination that the hours claimed by Mr. Gonzalez and Mr. Dominguez were a reasonable number of hours for this case. Generally, a court does not abuse its discretion simply because the evidence of attorney time is not provided in the form of billing records, or other similar documentation. *See West Telemarketing Corp. Outbound v. McClure*, 225 S.W.3d 658, 676 (Tex.App.--El Paso 2006, pet. granted, judgm't vacated w.r.m.). In light of the affidavit evidence provided by plaintiff's counsel, we conclude the evidence was legally sufficient to support the trial court's determination, and the trial court did not abuse its discretion by accepting plaintiff's counsels' number of hours calculation. We also conclude, in response to part two of Issue Four, that the evidence was legally sufficient to provide a reasonable basis for the trial court's determination of the hourly rate.

In part three of Issue Four, El Apple contends there is no evidence to support the trial court's decision to enhance the lodestar calculation. In appropriate cases, following the lodestar calculation, the trial court may adjust the lodestar up or down based on *Johnson* factors which have not already been considered in establishing the lodestar itself. *See Gonzalez*, 72 S.W.3d at 412. In this instance, the trial court adjusted the lodestar by awarding twice the product of the lodestar calculation. El Apple argues this enhancement was an abuse of discretion for two reasons: (1) a fee enhancement is only warranted in exceptional cases; and (2) the applicable

-18-

*Johnson* factors were, presumptively, included in the trial court's lodestar calculation and were not a proper basis for adjustment.

Regarding El Apple's first point, we note that Texas courts permit the use of a multiplier when awarding attorney fees pursuant to Texas statutes allowing recovery of attorney fees, including the TCHRA, based on the contingent nature of such cases. *Gonzalez*, 72 S.W.3d at 413. El Apple cites almost exclusively to federal authority for the proposition that a multiplier must be reserved for exceptional cases. Without discounting such authority as it applies to federal employment discrimination cases, we will not depart from our prior decision. Accordingly, we are not persuaded by El Apple's first argument.

In its second argument El Apple's asserts the trial court utilized one or more of the *Johnson* factors twice in its lodestar calculation. As with its prior point, El Apple cites primarily to federal authority in support of its argument. As with its prior point, we are not persuaded by El Apple's cited authorities. *See Navarrete*, 194 S.W.3d at 683 (noting Texas court may consider cases interpreting Title VII in cases brought under Chapter 21 of the Texas Labor Code).

At the close of the attorney's fees hearing, the trial court announced its decision regarding the number of hours, and hourly rates which would serve as the basis for the lodestar calculation. The court's findings on these two matters match the affidavit testimony provided by Mr. Dominguez and Mr. Gonzalez. Neither attorney accounted for the contingent nature of the case in his testimony regarding an appropriate hourly fee. By adopting the attorneys' testimony, the trial court likewise did not consider the contingent nature of the case in the lodestar. Because there is no indication the trial court considered the contingency factor more than once in its

-19-

calculation, it did not abuse its discretion by applying a multiplier.

In part four of Issue Four, El Apple contends the trial court's conditional awards for post-judgment and appellate proceedings was speculative and erroneous. The Texas Supreme Court has recently declined to require a post-appeal remand for a second determination of appellate fees. *See Varner v. Cardenas*, 218 S.W.3d 68, 70 (Tex. 2007). Citing to its 1971 opinion in *Int'l Sec. Life Ins. Co. v. Spray*, the Court noted that when evidence of appellate fees is provided to the trial court in the first instance, two trials on attorney's fees are not necessary. *See Varner*, 218 S.W.3d at 70, *citing Int'l Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971). Like the appellant in *Varner*, El Apple does not challenge the sufficiency of the evidence supporting the trial court's conditional awards, but only argues the speculative nature of prospective awards in general warrant a change in procedure. In light of *Varner*, we disagree.

As a final matter, we must address El Apple's argument regarding segregation of attorney's fees. Embedded in parts one and two of Issue Four, El Apple argues that due to a failure to segregate recoverable from unrecoverable fees, the trial court erred by awarding attorney's fees for claims to which Ms. Olivas was not entitled as the non-prevailing party. A party seeking attorney's fees must show that the fees were incurred on a claim that allows recovery of such fees, and is therefore ordinarily required to segregate fees incurred on claims allowing such recovery, from claims that do not. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex. 1997). However, in cases where discrete legal services advance both recoverable and unrecoverable claims, segregation is not required. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). If any fees relate solely to a claim for which fees are not recoverable, the claimant must segregate the unrecoverable from the recoverable claims. *Chapa*,

212 S.W.3d at 313. While the need to segregate attorney's fees is a question of law, the extent to which claims can or cannot be segregated is a mixed question of law and fact. *Id*. at 312-13. It is the claimant's burden to establish that segregation is not required. *See CA Partners v. Spears*, 274 S.W.3d 51, 81 (Tex.App.--Houston [14th Dist.] 2008, pet. denied).

Ms. Olivas achieved only partial success at trial. Although the jury determined El Apple was liable to Ms. Olivas for retaliation, it did not agree that Ms. Olivas had been subjected to discrimination based on her pregnancy. Section 21.259 provides for recovery of reasonable attorney's fees for the prevailing party. As Ms. Olivas was not the prevailing party on her discrimination claim, the attorney's fee award may only be upheld if the fees related to the unsuccessful claim have been segregated, or there is evidence to establish the claims were so intertwined that segregation was not necessary. *See Chapa*, 212 S.W.3d at 313; *see also Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct 1933, 1941, 76 L.Ed.2d 40 (1983)(noting that in Title VII cases in which the plaintiff achieves only partial success, the product of the total number of hours expended on the litigation times a reasonable hourly rate may produce an excessive amount as the statute authorizes recovery of fees for successful claims not, "whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.").

In the case before us, fees related to the unsuccessful claim were not segregated from fees related to the successful claim. While the extent to which certain claims can be segregated is a mixed question of law and fact, subject to a deferential standard of review in light of the trial court's role as the fact finder; the question of whether segregation is required in a particular case is a legal inquiry subject to *de novo* review. *See Chapa*, 212 S.W.3d at 312-13. In addition,

-21-

when, as in this case, the reviewing court does not have the benefit of findings of fact and conclusions of law, we may infer the trial court made the factual determination that the legal services provided advanced both recoverable and non-recoverable claims, so that the services were "so intertwined that [the fees] need not be segregated." *See id*. at 313-14; *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

El Apple's argument is limited to whether the trial court erred by determining Ms. Olivas was not required to segregate. It has not challenged the legal and factual sufficiency of the evidence supporting the court's factual determination that Ms. Olivas' claims fit within the exception. Furthermore, the evidence presented to the trial court, by both sides on this issue does not indicate that Ms. Olivas' attorneys performed discrete legal services in pursuit of her discrimination claim, which could have been segregated. Based on the record before us, and the circumstances of this case, we cannot conclude the trial court erred by failing to require segregation. *See Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568 *13 (Tex.App.--Austin Nov. 26, 2008, pet. denied)(mem. op.).

Accordingly, having considered and overruled all of El Apple's arguments regarding the trial court's attorney's fee award, we conclude the trial court did not abuse its discretion, and overrule Issue Four.

Having sustained Appellant's Issue Two, the judgment is reformed to omit the award of back-pay damages and associated pre-judgment interest. As the remainder of Appellant's issues have been overruled, we affirm the trial court's judgment as reformed.

April 21, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Rivera, J., and Moody, Judge
Moody, Judge (Sitting by Assignment)