United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 10, 2007**

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals
For The Fifth Circuit*

No. 04-30420

MARK EVANS,

Plaintiff - Appellee - Appellant,

CONTINENTAL CASUALTY COMPANY,

Intervenor -Appellee - Appellant,

v.

FORD MOTOR COMPANY,

Defendant - Appellant - Appellee,

FORD MOTOR CREDIT COMPANY,

Defendant - Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Mark Evans sued Ford Motor Company and Ford Motor Credit Company under the

Louisiana Products Liability Act, claiming that a defective 1999 Ford Explorer injured him.

At the conclusion of a trial, in which a jury found the Explorer's transmission was

unreasonably dangerous because of a nonconformity with an express warranty,[1] Ford Motor Company moved for judgment in its favor as a matter of law, contending there was no factual or legal basis for the finding that an express warranty had been breached. That motion was denied, but the district court ordered a remittitur, which Evans rejected. At the conclusion of a second trial on damages that resulted in a substantially lower award, the district court entered judgment against Ford Motor Company. Ford appeals the denial of its motion for judgment as a matter of law and asserts there was error in the jury charge, while Evans complains of the second trial and lower damage award. Because we conclude that there was no failure to conform to an express warranty, we reverse and render judgment for Ford.

# I

Extreme Nissan, a car dealership in New Orleans, purchased a used 1999 Ford Explorer from Ford Motor Credit Company at a Florida auction. The Explorer was still within the original 36-month/36,000 warranty issued by Ford Motor Company. At the auction, the Explorer was classified as a "green light" vehicle, which meant that it should not have any mechanical defects.

The Explorer and other vehicles purchased by Extreme Nissan at the Florida auction were shipped to New Orleans and unloaded from a transportation truck onto Extreme Nissan's lot. Mark Evans, then an assistant used car manager at Extreme Nissan, and one of his fellow employees began parking the cars and trucks. Evans drove the Explorer into

---

[1]LA. REV. STAT. ANN. § 9:2800.58 (2004).

a parking lane, thought he put it in "Park," and exited the vehicle with the motor running and the door open. As he was talking to a co-worker, the Explorer moved backward. Its door hit him, knocking him to the ground, and the front left wheel ran over his right leg.

Evans sued Ford Motor Company and Ford Motor Credit Company in Louisiana state court, asserting causes of action based on the Louisiana Products Liability Act. He also asserted various negligence claims against Ford Motor Credit Company. The defendants removed the suit to federal district court based on diversity jurisdiction.

Among other contentions, Evans asserted that the Explorer had a "perceived park" defect—arising from a 3/16ths-inch insert plate in the steering column between the park and reverse gears—that deceived him into believing that the Explorer was in "Park," when it in fact was not. Evans alleged that the Explorer was unreasonably dangerous: (1) in construction or composition; (2) in its design; and (3) due to inadequate warnings. Although Evans did not allege in his complaint that the Explorer failed to conform with an express warranty, this contention was listed as an issue in the pre-trial order,[2] which also cited the relevant section of the Louisiana Products Liability Act.[3]

After a *Daubert*[4] hearing, the district court excluded the testimony of Evans's expert witness regarding transmissions, and Evans did not introduce any expert testimony that the

---

[2]*See* FED. R. CIV. P. 16(e) (providing that a pre-trial order "shall control the subsequent course of the action unless modified by a subsequent order").

[3]LA. REV. STAT. ANN. § 9:2800.58 (captioned "Unreasonably dangerous because of nonconformity to express warranty").

[4]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

3

1999 Ford Explorer's transmission was defective. Evans did offer the lay testimony of Wayne Labit, an Extreme Nissan co-worker, who drove the Explorer a week after Evans's accident. Labit testified that on two occasions, he thought he had placed the vehicle in "Park," but after a few seconds the Explorer "jumped" or "popped" out of gear and moved in reverse. He also testified that although the shift indicator showed that the transmission was in the "P" position, the indicator had to be moved beyond the "P" for the park position to engage.

At the close of Evans's case-in-chief, Ford moved for judgment as a matter of law. The district court granted that motion in part, dismissing Evans's design and warning claims, but allowed Evans's construction claim to proceed. The district court also pointed out that nonconformity with an express warranty was an issue in the pre-trial order and allowed that claim to proceed.

At the conclusion of the evidence, the jury failed to find that the Explorer was defective in construction or composition and failed to find Ford Motor Credit Company at fault. But the jury found the vehicle was unreasonably dangerous "because of a nonconformity with an express warranty." The jury assessed damages of $900,000 for Evans's physical and mental pain and suffering, including loss of enjoyment of life and future loss of earning capacity, and $80,000 in past lost wages. The jury attributed 80% of the cause of those damages to Ford and 20% to Evans.

Ford moved for judgment notwithstanding the verdict, asserting that as a matter of law, Evans failed to meet the Louisiana Products Liability Act's requirements for

establishing an express-warranty claim.[5]  Alternatively, Ford moved for a new trial, contending that the jury charge did not conform to the statutory language of the Louisiana Act.  Evans moved for entry of judgment on the verdict.  The court denied both Ford's and Evans's motions and concluded that the jury's $900,000 damages award was excessive, advising Evans that it would order a new trial on damages unless he accepted a remittitur that reduced the $900,000 award to $150,000.  Evans refused the remittitur, and a new trial on damages was held, at which a second jury awarded a total of $119,871, including $10,500 for past lost earnings.  The district court then reduced that award by 20%, rendered judgment against Ford Motor Company in Evans's favor, and dismissed the claims against Ford Motor Credit Company with prejudice.

Ford Motor Company challenges the district court's judgment, asserting that: (1) Evans failed to meet section 9:2800.58's requirements for establishing an express-warranty claim; (2) Evans failed to show that his claim arose from "a reasonably anticipated use" of the Ford Explorer, as required by section 9:2800.54;[6] and (3) the district court erroneously charged the jury.  Evans cross-appeals, arguing that the district court erred in failing to enter a judgment on the first jury's verdict.  Because of our disposition of the

[5]LA. REV. STAT. ANN. § 9:2800.58 ("A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty had induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.").

[6]*Id.* § 9:2800.54 ("The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.").

issues, we reach only the first contention put forth by Ford.

## II

"We review *de novo* the district court's ruling on a motion for judgment as a matter of law."[7] "Although our review is *de novo*, . . . our standard of review with respect to a jury verdict is especially deferential."[8] A motion for judgment as a matter of law can be granted "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict."[9] "[I]n entertaining a motion for judgment as a matter of law, the court must review all of the evidence in the record[,] . . . draw[ing] all reasonable inferences in favor of the nonmoving party."[10] The court "may not make credibility determinations or weigh the evidence."[11] Thus, in reviewing the record as a whole, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe."[12] "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the

---

[7]*Brown v. Bryan County, Okla.*, 219 F.3d 450, 456 (5th Cir. 2000).

[8]*Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001) (internal quotation omitted).

[9]*Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 336 (5th Cir. 1997) (en banc).

[10]*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

[11]*Id.*

[12]*Id.*

moving party that is uncontradicted and unimpeached . . . ."[13]

The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damage caused by their products."[14] The only basis for the judgment awarding damages to Evans was the jury's finding that the Explorer failed to conform with an express warranty. The only remaining defendant is Ford Motor Company. Evans has not challenged the dismissal with prejudice of all his claims against Ford Motor Credit Company. Nor has he challenged the district court's rulings that foreclosed pursuit of his design and warning claims or the jury's failure to find a construction or composition defect.

> The Louisiana Products Liability Act defines an express warranty as:
>
> a representation, statement of alleged fact or promise about a product or its nature, material, or workmanship that represents, affirms, or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product.[15]

In support of his express warranty claims, Evans contends that he adduced some evidence at trial that (1) the Explorer failed to conform to statements in the owner's manual, (2) the shift indicator was an affirmative representation that the Explorer was in "Park" when it was not, (3) the Explorer did not conform to the "green light" warranty that was given at the

---

[13]*Id.* (internal quotation omitted).

[14]LA. REV. STAT. ANN. § 9:2800.52 (2004).

[15]*Id.* § 9:2800.53.

auction, and (4) the Explorer failed to conform to the manufacturer's 36-month/36,000 mile warranty.

Evans's arguments regarding the shift indicator and the "green light" warranty fail because, even assuming either the shift indicator or the "green light" constituted or contained an express warranty, a question we do not decide, there is no evidence that Ford Motor Company made any representation or warranty. At most, an inference might be drawn from the evidence that Ford Motor Credit Company issued a "green light" warranty at the auction at which Express Nissan purchased the Explorer as a used vehicle. But there is no evidence that Ford Motor Company had any role in the auction or in tagging the Explorer as a "green light" vehicle. Similarly, there is no evidence that any defect in or damage to the shift indicator was caused by Ford Motor Company. The evidence shows only that at the time Extreme Nissan purchased the Explorer as a used vehicle, the shift indicator was broken, not functioning properly, or both. There is no evidence that Ford Motor Company was the cause of any disrepair or defect. There is no evidence that at the time the Explorer left Ford's hands, the shift indicator "represented" that the vehicle was in "Park" when it was not.

Ford Motor Company was, however, responsible for any representations or warranties that the owner's manual contained, and Evans asserts that the following statements from that manual support the jury's verdict in his favor:

**P (Park)**

Always come to a complete stop before shifting into P (Park). Make sure the gearshift is securely latched in P (Park). This position locks the transmission and prevents the rear wheels from turning.

8

Evans emphasizes the statement that "[t]his position locks the transmission and prevents the rear wheels from turning." He cannot, however, uncouple that sentence from the preceding one: "Make sure the gearshift is securely latched in P (Park)." It is only when the gearshift is securely latched in "P" that the manual warrants that the transmission is locked. The evidence is undisputed that Evans did not "[m]ake sure that the gearshift [was] securely latched in P," and more importantly, the evidence is undisputed that the gearshift was not in fact securely latched in "P." Evans concedes this, and the expert testimony uniformly established that once the Explorer was latched in the "P" position, the gear mechanism could not physically have been shifted from "P" to "R" or any other position on the shift indicator unless and until the brake pedal was depressed. There was no warranty that the rear wheels would be prevented from turning if the shift mechanism was not securely latched.[16]

Furthermore, there was no evidence that Evans had seen or relied on the owner's manual before he was injured. To prevail on an express warranty claim under Louisiana law, someone injured by using a product must adduce evidence that he or she had read or was aware of the express warranty and was induced to use the product because of it.[17]

---

[16]The owner's manual also instructs and warns users to "[a]lways set the parking brake fully and make sure the gearshift is securely latched in P (Park)" before exiting the vehicle; "[n]ever leave your vehicle unattended while it is running"; and "[t]urn off the ignition whenever you leave your vehicle." Evans did not comply with any of these instructions.

[17]*See Brown v. Hudson*, 700 So. 2d 932, 940 (La. App. 1997) (rejecting an express warranty claim because there was "no evidence that Mrs. Brown read the owner's manual or, more importantly, that provisions in question induced her to use the restraint system."); *Clay v. Int'l Harvester Co.*, 674 So. 2d 398, 412 (La. App. 1996) ("No testimony or proof was adduced

Finally, Evans has failed to offer any evidence that the manufacturer's 36-month/36,000 warranty was breached. He merely recites that the warranty remained in effect at the time of his injury. He points to no provision in the warranty that he contends supports the jury's finding.

We note that Evans argues that the testimony of Ford's expert witnesses and reported decisions of various courts support his assertion that the Explorer was defectively designed. However, Evans's design defect claims were dismissed by the district court before the case was submitted to the jury, and Evans has badly mischaracterized the expert testimony at trial. No expert testified that the Explorer's transmission, shifting mechanism, or shifting indicator was defectively designed.

Because there is simply no evidence to support a finding that the Explorer failed to conform with an express warranty, we do not reach Ford's other contentions, nor do we reach Evans's complaints regarding the second trial on damages.

* * * * *

We REVERSE the district court's judgment denying Ford Motor Company's motion for judgment as a matter of law and RENDER judgment in favor of Ford.

---

concerning whether Clay, his employer, or any co-employees had ever been made aware of any express warranty prior to using the tractor. For this reason, we find that Clay failed to prove that the model 3294 tractor was unreasonably dangerous for noncompliance with an express warranty.").

10