# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 1, 2011

No. 09-51137
Consol. w/ No. 10-50026

Lyle W. Cayce
Clerk

FRED J. JACKSON,

Plaintiff-Appellee

v.

HOST INTERNATIONAL, INC.,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:08-CV-112

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Host International Inc. ("Host") appeals the final judgment entered against it and damages awarded to Plaintiff-Appellee Fred J. Jackson ("Jackson") after a jury trial on Jackson's claims that Host violated the Texas Commission on Human Rights Act (the "Human Rights Act"), TEX. LAB. CODE §21.001 et seq. Host also appeals the attorney's fees awarded by the district court. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-51137
Consol. w/ No. 10-50026

Jackson was employed with Delaware North, the contractor for concessions at the El Paso International Airport.[1] Jackson worked at the airport since 1990, most recently in the position of general manager. In 2006, Delaware North lost the contract with the airport, and Host took over concessions. Host decided to continue employing Jackson as general manager for 180 days on a trial basis. When Host extended its offer to Jackson, the Host district manager, Bob Boorom ("Boorom"), commented to Jackson that his salary, $70,000 per year, was good "for a person your age." Jackson was then 57 years old.

During the trial period of employment, Jackson discovered a discrepancy in salaries—apparently, older managers were paid less than younger managers with less seniority and experience. On February 21, 2007, Jackson reported this discrepancy to Boorom, who responded that the company needed to pay more to younger workers in order to attract "younger, talented people." Host did not generate a written report of Jackson's complaint or investigate further.

On March 7, less than two weeks after Jackson reported the pay discrepancy to Boorom, Jackson's employment was terminated. Host had not documented any disciplinary action or warnings prior to terminating Jackson's employment, and Jackson received no written documentation of complaints about his performance. During the meeting when Jackson was informed that he was being fired, Boorom told Jackson, "At your age, I think you would rather be doing things here in El Paso for the community than your job here." Boorom also told Jackson that he was being fired for his lack of a good relationship with a local brand partner and for missing two conference calls. Jackson disputed at trial that he missed more than one conference call; he also averred that he had

---

[1] Because we review the jury verdict for sufficiency of the evidence, we draw all inferences in favor of the non-movant—Jackson. *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Therefore, we relate Jackson's version of the facts here.

No. 09-51137
Consol. w/ No. 10-50026

been instructed that he did not need to interact with the local brand partner, as Boorom would handle that responsibility. No termination form was ever completed to document the termination; Jackson's employment was verbally terminated. Host's internal emails, offered at trial, were inconsistent regarding its justifications for terminating Jackson's employment.

Jackson sued Host in state court for age discrimination and retaliation under §§ 21.051 and 21.055 of the Texas Labor Code. Following removal on diversity grounds, a jury trial was held. Host moved for judgment as a matter of law at the close of Jackson's case in chief, which the district court denied. The jury found in Jackson's favor on both claims and awarded a total of around $982,500 in damages. The damages award included $227,500 in back pay, $455,000 in front pay, $200,000 in past compensatory damages, and $100,000 in future compensatory damages. The district court also denied Host's motion for new trial. The district court awarded $175,000 in trial attorney's fees to Jackson. Host filed a timely notice of appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## 1.   Jury Verdict on the Merits

On appeal, Host argues that the district court erred when it denied Host's motions for judgment as a matter of law and new trial because there was insufficient evidence to support the jury's findings that (1) Host terminated Jackson's employment based on his age; and (2) Host terminated Jackson's employment in retaliation for Jackson's report of perceived pay discrepancies of Host employees based on age. We review the district court's denial of Host's motion for judgment as a matter of law *de novo*. *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007). "Although our review is *de novo*, . . . our standard of review with respect to a jury verdict is especially deferential." *Id.* (internal quotation marks omitted). A motion for judgment as a matter of law should be

No. 09-51137
Consol. w/ No. 10-50026

granted only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Id.* (internal quotation omitted). In reviewing a motion for judgment as a matter of law, we "review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)(internal quotation omitted). The ruling must be supported by more than a scintilla of evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003).

"Our standard of review of a denial of a motion for new trial is more deferential than our review of the denial of a motion for judgment as a matter of law." *SMI Owen Steel*, 520 F.3d at 444 n.18 (internal quotation omitted). "The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court, and reversible only for an abuse of that discretion." *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). "When the trial judge has refused to disturb a jury verdict, all the factors that govern our review of his decision favor affirmance." *Foradori v. Harris*, 523 F.3d 477, 504 (5th Cir. 2008) (internal quotation omitted). "Deference to the trial judge, who has had an opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact." *Id.* (internal quotation omitted).

A.   **Age Discrimination Finding**

Host contends that the jury's findings that (1) age was a motivating factor in Host's decision to terminate Jackson, and (2) Host would not have discharged Jackson when it did absent the consideration of age were not supported by

4

No. 09-51137
Consol. w/ No. 10-50026

sufficient evidence.[2] To recover for age discrimination under the Human Rights Act, relying solely on circumstantial evidence (as Jackson did), an employee must show that (1) the employee is a member of a protected class, i.e., over the age of forty; (2) that the employee was qualified for the position; (3) that an adverse employment action occurred; and (4) that the employee was replaced by someone younger or was discharged because of age. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973) (laying out burden-shifting analysis); *see also Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001) (applying *McDonnell Douglas* framework to Human Rights Act age discrimination claim).[3] Once this *prima facie* case is made, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Evans*, 246 F.3d at 350. Then, the plaintiff has the opportunity to demonstrate that the defendant's given reasons are merely pretextual. *Id.*

As the district court noted in its denial of Host's motion for judgment as a matter of law, Jackson presented more than a scintilla of evidence on each of these elements. Boorom made several remarks about Jackson's age, one at the

---

[2] Host also argues that *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343 (2009), requires that Jackson establish "but for" causation, rather than "motivating factor" causation. However, *Gross* dealt exclusively with the ADEA, not with the Human Rights Act. The Human Rights Act expressly provides that employees need only show that age is a "motivating factor" for the employment decision. TEX. LAB. CODE § 21.125(a). The ADEA has no such provision. 29 U.S.C. §§ 621–34. *Gross* does not require us to disregard the express language of the Human Rights Act. *Cf. Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (applying "motivating factor" standard in a gender discrimination claim under the Human Rights Act even though Title VII requires "but for" causation). However, as discussed further in the main text, Jackson's evidence proffered at trial was sufficient to justify recovery under either causation standard.

[3] As one of the purposes of the Human Rights Act is to "identify and create an authority that meets the criteria under . . . 29 U.S.C. Section 633 [the ADEA]," TEX. LAB. CODE § 21.001(2), "analogous federal statues and the cases interpreting them guide the reading of the [Human Rights Act]." *Arismendez*, 493 F.3d at 607 (internal quotation marks omitted).

time of termination. Jackson's explanation regarding the termination of his employment has remained consistent, beginning with his EEOC charge and continuing through trial. Host's explanation, both in internal emails and in Boorom's testimony is inconsistent, ranging from asserting that Jackson quit to asserting that Jackson was fired for being a dictator, or alternatively for doing nothing at all. Additionally, the termination of Jackson's employment came shortly after he raised the issue of disparate pay based on age to Boorom. And, Host could show no documentary evidence whatsoever—not even internal emails—to support its claim that Jackson was not performing his job to their standards. At the end of the day, the jury was called to determine which story it believed—Jackson's or Host's. It chose Jackson's. The jury was free to credit or discredit his evidence, and we may not re-evaluate the jury's decisions regarding credibility. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000). Sufficient evidence supports the jury's verdict on Jackson's Human Rights Act age discrimination claim.

## B.    Retaliation Finding

Host argues that the evidence was not sufficient to support the jury's finding that Host terminated Jackson's employment "in retaliation against [Jackson] because he opposed alleged differences in pay between older and younger managers." In contrast to the age discrimination claim, here Jackson needed to show "but for" causation in order to recover. *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487–89 (5th Cir. 2004). The Human Rights Act allows employees to recover for retaliation where the employee demonstrates that: (1) the employee participated in a protected activity; (2) an adverse employment action occurred; and (3) the adverse employment action and the protected activity are causally linked. *Id*. at 487. Once this showing is made, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason

No. 09-51137
Consol. w/ No. 10-50026

for the employment action. *Id.* If the defendant meets this burden, then the plaintiff must prove that the stated reasons are pretextual. *Id.*

Again, Jackson presented more than a scintilla of evidence on each of the elements of the prima facie case. Under Chapter 21 of the Texas Labor Code, an employee engages in a protected activity only if the employee "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding or hearing." TEX. LAB. CODE § 21.055. Host argues that Jackson did not engage in a protected activity because his discussion with Boorom about pay disparity centered around qualifications, not age. However, Jackson made a complaint. That complaint drew the parallel between age and a disparity in pay. And, Boorom allegedly made an age-related comment in response, demonstrating that he was cognizant that the complaint was about age. Therefore, Jackson has shown a protected activity. Assuming for the sake of argument that Host showed legitimate reasons for the termination, as described above, Jackson also presented sufficient evidence to allow the jury to find pretext. Host's internal communications surrounding Jackson's firing were riddled with inconsistencies, and testimony at trial was also inconsistent. Given these conflicts, the jury could easily have found Host's justifications to be pretextual. Host's arguments to the contrary center entirely around credibility decisions, and we may not review those determinations. Moreover, the jury may have found pretext in the fact that Host failed to document Jackson's report regarding the disparity in age and pay in contravention of its own policies. Sufficient evidence supports the jury's retaliation finding.

## 2.   **Jury Instructions**

Host next contends that the district court erred by not instructing the jury on the "same actor" inference. "We review the propriety of jury charges and

No. 09-51137
Consol. w/ No. 10-50026

instructions under the deferential abuse of discretion standard," giving district courts "wide latitude in formulating jury charges." *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 772 (5th Cir. 2010) (internal quotation omitted). To prevail on its jury instruction challenge, an appellant must show that the "instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [defense]." *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 578 (5th Cir. 2004) (internal quotation omitted).

Host submitted the following proposed instruction: "Where there is a short lapse of time between the hiring and firing of FRED JACKSON and the same person was involved in the hiring and firing of FRED JACKSON, there is a strong inference that any adverse employment action resulted from nondiscriminatory reasons." "The 'same actor' inference arises when the individual who allegedly discriminated against the plaintiff was the same individual who hired the plaintiff and gives rise to an inference that discrimination was not the motive behind plaintiff's termination." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 228 n.16 (5th Cir. 2000).

Host fails to establish that the district court abused its discretion in declining to instruct the jury on the "same actor" inference. First, it is not uncontested that the same person both hired and fired Jackson. Boorom clearly terminated Jackson, and Boorom testified that he interviewed Jackson and presented him with an offer letter; however, the offer letter from Host is signed by Bill Casey. *See id.* (inference did not overcome a jury verdict in favor of the employee where "the jury had both versions before it and had the opportunity to take the information into account in whatever fashion it found credible"). Second, although the district court did not specifically instruct the jury on the

8

No. 09-51137
Consol. w/ No. 10-50026

"same actor" inference, it did give a general instruction on permissible inferences. Host was free to argue to the jury that it should draw inferences based on Boorom's involvement in both the hiring and firing. Host has not shown that the lack of the "same actor" instruction seriously impaired its ability to present a defense, and, thus, Host has not established that the district court abused its discretion when it did not submit the "same actor" inference instruction to the jury.

3.    **Damages**

Host also argues that the district court erred when it denied Host's motion for new trial or remittitur of the damage awards. "[I]n an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy, and appellate control of the district court's ruling is limited to review for 'abuse of discretion.'" *Foradori v. Harris*, 523 F.3d 477, 497–98 (5th Cir. 2008). However, since "[t]he purpose of the [Human Rights Act] is to coordinate and conform with federal law under Title VII and the ADEA[,]" Texas state courts, and therefore we also, may look to federal precedent in the absence of state decisional law. *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 739 (5th Cir. 1999) (citing *Caballero v. Cent. Power & Light Co.*, 858 S.W.2d 359, 361 (Tex. 1993)).

Under the Human Rights Act, awards of front pay and back pay are equitable in nature, and we review a trial court's decision to award them for an abuse of discretion. TEX. LAB. CODE § 21.258; *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 271 (Tex.App.–Fort Worth 2004, no pet.) (back pay); *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 228 (Tex.App.–San Antonio 1998, pet. denied) (front pay). Although the decision to award front pay and back pay is left to the discretion of the court, the amount of damages is a fact question, which may be

9

No. 09-51137
Consol. w/ No. 10-50026

submitted to a jury. *Autozone, Inc. v. Reyes*, 272 S.W.3d 644, 658–59 (Tex. App.–Corpus Christi 2006, pet. granted), *rev'd on other grounds*, 272 S.W.3d 588 (Tex. 2008). Section 21.2585 provides the legal remedy of compensatory damages for violations of the Human Rights Act. § 21.2585. Texas courts review the amount of damages awarded by a jury for factual sufficiency, "set[ting] aside the verdict only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust," *Enright v. Goodman Dist., Inc.*, ___ S.W.3d ___, 2010 WL 4618175, at *2 (Tex.App.–Houston [14th Dist.] 2010, no pet.), and legal sufficiency, upholding the verdict "[i]f there exists any evidence to support the finding." *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App.–Corpus Christi 1995, writ denied).

Host argues that the district court abused its discretion when it awarded back and front pay, or alternatively that the awards are too large, because the evidence is insufficient to support them. Specifically, Host contends that Jackson failed to demonstrate that he attempted to mitigate his damages and clearly stopped attempting to mitigate when he became self-employed. Additionally, Host argues that the jury's award of an annual bonus worth the equivalent of 35% of Jackson's annual salary was speculative and not supported by the evidence. Host further contends that even if there were enough evidence to support an award of front pay, the trial court erred when it awarded the jury's full front pay award without reductions for present value or interim earnings. Host also contests the jury's awards of past and future compensatory damages, alleging that they find no support in the record.

A.   **Back Pay**

The jury awarded $227,500.00 in back pay. "'Back pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not

No. 09-51137
Consol. w/ No. 10-50026

occurred." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 n.8 (5th Cir. 1996) *abrogated on other grounds, Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581 (1998). Back pay may include fringe benefits such as a bonus, but must be supported by evidence in the record. *See Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950, 960 (5th Cir. 1993) (reversing award of back pay for insurance where plaintiff adduced no proof that he bought insurance). Host argues that the back pay award is in error because (1) Jackson has not shown that he diligently pursued similar employment, and (2) the jury improperly added a 35% annual bonus to Jackson's salary.

"Because an award of back pay is an equitable remedy designed to make the injured party whole," we have held "that an injured party has a duty . . . to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages." *Patterson*, 90 F.3d at 936. The burden is on the employer to prove that (1) substantially equivalent work was available; and (2) the former employee did not exercise reasonable diligence to obtain it. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [former employee] has been discriminatorily terminated." *Id.* (internal quotation omitted). "Self-employment may be a reasonable alternative to seeking other employment for purposes of mitigation." *Hill v. City of Pontotoc, Miss.*, 993 F.2d 422, 427 (5th Cir. 1993). If an employer can demonstrate that the former employee did not exercise reasonable diligence, it need not prove the availability of equivalent work. *Nabors*, 330 F.3d at 393. "Whether the plaintiff has engaged in such an effort is a question of fact subject to review for clear error[.]" *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998).

No. 09-51137
Consol. w/ No. 10-50026

The record contains enough evidence that the jury's implicit finding that Jackson diligently attempted to mitigate his damages[4] is not clearly erroneous. Jackson testified at trial and adduced evidence to demonstrate that he applied for jobs with the city, the county, various hotels, retailers, and restaurants. Because El Paso has only one airport, he was unable to apply for the same position with another airport company. He further testified that after approximately a year and a half of fruitless search for employment, he opened his own business, which at the time of trial was not earning a profit. There is sufficient evidence in the record that the jury could believe that Jackson was reasonably diligent in his employment search. Therefore, the jury's implicit finding that Jackson had diligently attempted to find work was not clearly erroneous.

Host also argues that the jury erroneously found that Jackson would have received bonuses of 35% of his annual salary each year for the two and a half years between the termination of his employment and trial. Host raises this argument for the first time on appeal. Although Host argued in its motion for new trial that the evidence did not support the back pay award, it never discussed the bonus. Therefore, this argument is waived. *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005); *see also United States v. Krout*, 66 F.3d 1420, 1434 (5th Cir. 1995) ("A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review.") (internal quotation omitted). The district court did not abuse its discretion when it awarded back pay.

**B.    Front Pay**

---

[4]   The jury was not given a separate interrogatory regarding mitigation of damages. Instead, the mitigation instruction was a part of the generalized instructions on damages for back pay. Since the jury awarded Jackson the entire amount of his back salary plus bonuses, it implicitly found that Jackson had diligently attempted to mitigate his damages.

12

No. 09-51137
Consol. w/ No. 10-50026

The jury awarded $455,000 in front pay. "[F]ront pay is a prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490–91 (5th Cir. 2007). "Reinstatement generally is preferable to an award of front pay, and we customarily require the district court to articulate its reasons for finding reinstatement infeasible and awarding front pay in lieu of reinstatement." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n.27 (5th Cir. 2001). The award should be reduced by potential future earnings. *Id.* at 489. And, the court "must consider [a plaintiff's] failure to mitigate . . . damages in determining the extent to which, if at all, front pay is appropriate." *Id.* (internal quotation omitted). "Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991). Host argues that the award of front pay was an abuse of discretion because (1) there was insufficient evidence in the record to support it; (2) Jackson still had a duty to mitigate the damages; (3) the district court should have made a finding concerning reinstatement; and (4) the district court should have reduced the award to account for present value or interim earnings.

The jury awarded Jackson his base salary of $70,000 plus an annual bonus of 30%, or $21,000, for a period of five years, totaling $455,000. Host did not raise the issue of the amount of the bonus for the front pay award in its brief. It is, therefore, waived. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 417 (5th Cir. 2009) ("[W]e deem this issue waived due to inadequate briefing."). And, Host does not dispute the amount of salary that Jackson would have been paid had he remained employed. Instead, Host focuses on the issue of mitigation.

Like back pay, an award of front pay must take into account a plaintiff's failure to mitigate damages. *Giles*, 245 F.3d at 489. Jackson testified, and the

13

No. 09-51137
Consol. w/ No. 10-50026

jury implicitly found, that he had diligently attempted to find equivalent employment. As discussed above, that finding was not clearly erroneous. While the district court could have found that Jackson's business was likely to make a profit at some point and could have reduced the amount of the front pay award, nothing in the record required that the district court do so. *Id.* at 490 ("Though the evidence of [plaintiff's] failure to mitigate may have been sufficient to allow the court to deny front pay, it was insufficient to require it to do so."). Therefore, there was sufficient evidence in the record for the jury to arrive at the $455,000 award of front pay.

For the first time on appeal, Host argues that the district court erred when it made no express finding on reinstatement. Since Host did not make this argument to the district court, it is waived. *Jethroe*, 412 F.3d at 601; *Krout*, 66 F.3d at 1434. Also for the first time on appeal, Host argues that the district court erred by not reducing the award of front pay for present value. Host did not raise this issue before the district court or object to the jury instruction on calculating front pay which could have included instructions to discount for present value. Therefore, this argument is also waived. *Jethroe*, 412 F.3d at 601.

Last, Host argues that the district court erred when it failed to subtract earnings from Jackson's business from the jury's award of front pay. This argument, although presented separately, is part and parcel of Host's failure-to-mitigate argument. Although the front pay award serves a different purpose from that of back pay, the burden to prove failure to mitigate still lies with the defendant. *Giles*, 245 F.3d at 489. Put another way, the affirmative defense of failure to mitigate lies entirely with the defendant, including the burden to establish the amount that the front pay award should be tolled or reduced. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 426 (6th Cir.

14

1999); *accord Giles*, 245 F.3d at 489–90 (affirming a district court's award of front pay although it had not deducted plaintiff's earnings from a job not substantially equivalent to his job with defendant). Jackson testified that his business had not made a profit at the time of trial. Host adduced no evidence to the contrary. Additionally, the jury heard evidence about the difficulty Jackson suffered trying to find a substantially equivalent job in El Paso at age 60. And, Host adduced no evidence to demonstrate that substantially equivalent jobs were available. The district court instructed the jury that it could award front pay, but should subtract "the amount of wages that in reasonable probability [Jackson] will earn after the date of this trial." The jury made no adjustments for future earnings and awarded Jackson $455,000. It was not clearly erroneous for the jury to find that Jackson's business might not succeed in the El Paso market and that Jackson would be unable to find substantially equivalent employment before he reached age 65. The district court did not abuse its discretion when it awarded the amount suggested by the jury.

### C.    Compensatory Damages

The Human Rights Act allows compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses[.]" TEX. LAB. CODE § 21.2585(d). The jury awarded Jackson $200,000 in past compensatory damages and $100,000 in future compensatory damages. Host argues that these awards are unsupported by the evidence.

In order to demonstrate emotional distress, we have required that a plaintiff show (1) "a specific discernable injury to [his] emotional state" and (2) "more than vague allegations to establish existence of the injury." *Giles*, 245 F.3d at 488 (internal quotation omitted). "[H]urt feelings, anger and frustration are part of life and [are] not the types of harm that could support a mental

15

anguish award." *Id.* (internal quotation omitted). "Damages for emotional distress may be appropriate, however, where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." *Id.* (internal quotation omitted). And although we greatly prefer corroborating testimony, "we [have never] held[] that a plaintiff may never prove mental anguish damages with his own testimony alone." *Id.* Here, Jackson testified that he has been diagnosed with severe depression and post traumatic stress disorder. His depression was and is severe enough to require ongoing treatment and medication. His medical records confirming this were entered into evidence. Additionally, he testified that he has suffered other physical consequences: weight gain, high blood pressure, and sleeplessness. He also argues on appeal that he adduced testimony that he suffered significant anxiety because he had to sell his house and move into an apartment, and he had to withdraw money from his pension plan with the accompanying penalty in order to be able to afford to live. There is sufficient testimony in the record to support the award of compensatory damages.

Nor has Host demonstrated that the award of compensatory damages is disproportionate. "A verdict is excessive as a matter of law if shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). "This court has firmly established in previous cases that it will not reverse a jury verdict for excessiveness except on the strongest of showings." *Foradori*, 523 F.3d at 504 (internal quotation omitted) (collecting cases). Jackson testified to injuries that, if credited, could lead the jury to find that the damages he incurred were worth $200,000. He testified that he incurred significant, measurable physical and emotional damage for the two and a half

16

year period between his firing and trial. An award of this amount does not exceed any rational estimate of the damage based on the facts before the jury.

The jury also awarded $100,000 in future compensatory damages. Jackson testified that he would need ongoing treatment for depression and post traumatic stress disorder. He still is not working at a job that is comparable to his position with Host. And, he has testified that his self-esteem is closely tied to his ability to work. This award is not unsupported by the record in front of the jury, and the district court did not abuse its discretion in awarding these amounts.

### 4.  Attorney's Fees

#### A.  Trial

Host next argues that the district court erred when it (1) improperly applied the lodestar method; and (2) enhanced the attorney's fees award. "We review the district court's award of attorney's fees for abuse of discretion." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1043 (5th Cir. 2010) (internal quotation omitted). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited." *Perdue v. Kenny A. ex. rel. Winn*, 130 S. Ct. 1662, 1676 (2010). The burden is on the plaintiff to demonstrate the amount of attorney's fees, including any adjustment or enhancement. *Blum v. Stenson*, 465 U.S. 886, 901–02, 104 S. Ct. 1541, 1550 (1984). And, "a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award." *Perdue*, 130 S. Ct. at 1673. A court abuses its discretion when it awards attorney's fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement." *Id*. at 1676.

The Human Rights Act states that "a court may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." TEX. LAB. CODE § 21.259(a).

No. 09-51137
Consol. w/ No. 10-50026

The district court in this case used the lodestar method to calculate attorney's fees. *See Dillard Dept. Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex.App.–El Paso 2002, pet. denied). This method involves two steps. First, the court calculates the lodestar itself which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999). Next, the court may adjust the amount based on the *Johnson* factors.[5] *Id.* Here, the district court calculated the lodestar amount by multiplying $300 per hour by 388.4 hours to find a total lodestar amount of $116,520. The district court then considered Jackson's motion for an enhancement of the fees. It found that three of the *Johnson* factors merited an enhancement of $58,480 for a total award of $175,000.

---

[5] In *Johnson*, we articulated a series of twelve factors for courts to use as guidelines when determining attorney's fees under Title VII:

| | |
|---|---|
| (1) | The time and labor required[,] |
| (2) | The novelty and difficulty of the questions[,] |
| (3) | The skill requisite to perform the legal service properly[,] |
| (4) | The preclusion of other employment by the attorney due to the acceptance of the case[,] |
| (5) | The customary fee[,] |
| (6) | Whether the fee is fixed or contingent[,] |
| (7) | Time limitations imposed by the client or the circumstances[,] |
| (8) | The amount involved and the results obtained[,] |
| (9) | The experience, reputation, and ability of the attorneys[,] |
| (10) | The "undesirability" of the case[,] |
| (11) | The nature and length of the professional relationship with the client[, and] |
| (12) | Awards in similar cases. |

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S. Ct. 939, 942 (1989). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

No. 09-51137
Consol. w/ No. 10-50026

Host first objects that the district court used an hourly rate that is too high. The district court calculated the lodestar amount using an hourly rate of $300. Not only did Host not object to this figure, in its supplemental response to the motion for attorney's fees, it abandoned its position that the rate should be $225 per hour and expressly stated that it did *not* object to the $300 per hour rate. Because Host now argues a position that is inconsistent with its position in the district court, it is foreclosed from arguing that the hourly rate was improper. *United States v. Rodriguez*, 602 F.3d 346, 350–51 (5th Cir. 2010) ("Review of invited errors is . . . precluded; such errors are reviewed only for 'manifest injustice.'"); *see also Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1106 n.15 (5th Cir. 1997).

Host next argues that the trial court erred when it enhanced the lodestar amount by $58,480, or approximately 50%. Jackson urged the trial court to enhance the attorney's fees based on seven of the factors enumerated in *Johnson*. The district court rejected several of Jackson's enhancement arguments,[6] finding that those factors were already subsumed in the lodestar calculation. However, it found enhancement was proper based on (1) the fact that the fee was contingent; (2) the amount involved and the result obtained; and (3) awards in similar cases. The district court, therefore, enhanced the fee but did not differentiate the amount of enhancement attributable to each factor.

Host argues that in light of the Supreme Court's recent holding in *Perdue*, the district court abused its discretion when it enhanced the lodestar amount. In *Perdue*, the Supreme Court reversed an attorney's fees award under 28 U.S.C. § 1988 enhanced by the district court based on superior performance and the contingent nature of the fees. *Perdue*, 130 S. Ct. at 1670. Reiterating that in its

---

[6] It declined to enhance based on: (1) time and labor required; (2) novelty and difficulty of the question; and (3) experience, reputation and ability of the attorneys.

19

No. 09-51137
Consol. w/ No. 10-50026

view the *Johnson* factors are an alternative method to lodestar for calculating attorney's fees rather than factors upon which a lodestar amount may be enhanced, the Supreme Court "reject[ed] any contention that a fee determined by the lodestar method may not be enhanced in any situation." *Id.* at 1673. "Instead, there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* The Court described three circumstances under which enhancement could be permissible, if only rarely: (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value;" (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted;" and (3) "in which an attorney's performance involves exceptional delay in the payment of fees." *Id.* at 1674–75. The Court held that enhancements based on contingent fees were already foreclosed by its ruling in *City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638 (1992), and that enhancements also may not be based on superior performance. *Id.* at 1676 (citing *Dague*, 505 U.S. at 565, 112 S. Ct. at 2638). Host contends that because none of the three circumstances is present here, enhancement was an abuse of discretion. Jackson argues that attorney's fees under the Human Rights Act is based on Texas law and, thus, *Perdue* does not govern.

The Texas Supreme Court has referred to the *Johnson* factors, but it has never formally adopted them. *See Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 960 (Tex. 1996). "When a relevant state's precedents in a diversity case do not fully advise us on the law, we must make our best determination of what that state's highest court would decide." *Paul v. Landsafe Flood Determination, Inc.*,

No. 09-51137
Consol. w/ No. 10-50026

550 F.3d 511, 515 (5th Cir. 2008). "In making an '*Erie* guess' in a diversity case, this court will seek guidance by looking to the precedents established by intermediate state appellate courts only when the state supreme court has not spoken on an issue." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004) (internal quotations omitted).

The Texas Courts of Appeals have consistently applied enhancements based on the *Johnson* factors, including the contingent fee nature of the case despite the Supreme Court's unequivocal holding in *Dague*. *See, e.g., El Apple I, Ltd. v. Olivas*, 324 S.W.3d 181, 193 (Tex.App.–El Paso 2010, pet. filed); *Guity v. C.C.I. Ent., Co.*, 54 S.W.3d 526, 529 (Tex.App.–Houston [1st Dist.] 2001, no pet.); *Pitts v. Dallas Cnty. Bail Bond Bd.*, 23 S.W.3d 407, 412 (Tex.App.–Amarillo 2000, pet. denied). And, the El Paso Court of Appeals has addressed *Perdue*, specifically as it relates to contingent fees, and distinguished it. *El Apple I*, 324 S.W.3d at 193 (internal citation omitted) ("[W]e note that Texas courts permit the use of a multiplier when awarding attorney fees pursuant to Texas statutes allowing recovery of attorney fees, including the [Human Rights Act], based on the contingent nature of such cases. El Apple cites almost exclusively to federal authority for the proposition that a multiplier must be reserved for exceptional cases. Without discounting such authority as it applies to federal employment discrimination cases, we will not depart from our prior decision [in *Gonzales*]."). While the Texas Supreme Court has not spoken to the issue of enhancements, the Texas Courts of Appeals have given us enough guidance to determine that under Texas law, the district court's enhancement of the attorney's fees based on the *Johnson* factors was not an abuse of discretion.

## B.    Appeal

Jackson seeks attorney's fees for his successful defense of this appeal, relying on Texas Labor Code § 21.259, which allows a prevailing party to recover

No. 09-51137
Consol. w/ No. 10-50026

reasonable attorney's fees in a proceeding under the Labor Code. Under Texas law, if a party is entitled to recover attorney's fees in the trial court, the party is also entitled to attorney's fees after successfully defending on appeal. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421,436 (5th Cir. 2003) (citing *Gunter v. Bailey*, 808 S.W.2d 163, 166 (Tex. App.–El Paso 1991, no writ)). The district court made no provision for appellate attorney's fees in its fee order. A district court's refusal to award appellate attorney's fees before an appeal has even been taken is not error. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir.2003). The issue of appellate attorney's fees is a matter for the district court on remand following the resolution of the underlying appeal. *See id.* Accordingly, we remand to the district court for the limited purpose of determining attorney's fees for this appeal.

AFFIRMED; LIMITED REMAND.