

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00483-CV

WILLIAM D. STRATTON                                    APPELLANT

V.

XTO ENERGY INC., BOB R.                                APPELLEES
SIMPSON, WILLIAM H. ADAMS III,
LANE G. COLLINS, PHILLIP R.
KEVIL, JACK P. RANDALL, SCOTT
G. SHERMAN, HERBERT D.
SIMONS, KEITH A. HUTTON,
VAUGHN O. VENNERBERG II,
LOUIS G. BALDWIN, TIMOTHY L.
PETRUS, GARY D. SIMPSON,
EXXON MOBIL CORPORATION,
AND EXXON MOBIL INVESTMENT
CORPORATION

----------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

In this shareholder class action, appellant William D. Stratton, the lead plaintiff and representative of the class members (the Plaintiffs), appeals the trial court's order awarding $3,972,367.75 in attorneys' fees. We affirm the trial court's judgment as modified.

## I. Background Facts

In late 2009, ExxonMobil Corporation (ExxonMobil) and XTO Energy, Inc. (XTO) announced that they had entered into an agreement that resulted in one of the largest mergers in U.S. history. Public shareholders of XTO filed a total of sixteen putative class actions in a Texas state court, a Delaware chancery court, and a Texas federal court. The Plaintiffs alleged that the XTO Board of Directors breached their fiduciary duty to the shareholders by, among other things, failing to make full and fair disclosures and failing to maximize shareholder value in the merger.

On April 21, 2010, after two months of intensive discovery, the parties agreed to a settlement. As part of the relief, ExxonMobil agreed, subject to court approval, to pay "up to" $8,800,000 in attorneys' fees and expenses. In September 2010, with their motion for final certification of the settlement class and final approval of the settlement, Plaintiffs' counsel filed their application for attorneys' fees. Plaintiffs requested an award of $188,355.66 for expenses and a lodestar of $3,972,367.75 and a multiplier of 2.17, for an award of $8,611,644.34 in attorneys' fees (a total award of $8,800,000). Counsel attached affidavits of all twenty-one law firms attesting to the work done by each firm and the hours and

rates of their attorneys, and the affidavit of William Kelly Puls, which detailed the history of the action, including the negotiations that lead to the settlement, the terms of the settlement, and the benefits to Plaintiffs. Because the request was within the range agreed upon in the settlement, the defendants did not object.

After a hearing in which no live witnesses or other additional evidence were presented, the trial court issued its final judgment granting Plaintiffs' request for $188,355.66 for expenses, but awarding only $3,972,367.75 of the requested $8,611,644.34 for attorneys' fees. The trial court issued a letter "to clarify some of the reasons for the court's ruling." In it, the trial court noted several problems with the evidence supporting the award. Specifically, the trial court noted a lack evidence that the hours worked and rates billed were reasonable. The trial court also expressed concern that some of the factors to be considered in granting a multiplier "would not be appropriate across the board" because of the firms' differences in size, location, specialization, and degree of involvement with the case. The trial court concluded,

> [D]espite the concerns set forth above regarding the sufficiency of the evidence and gaps in proof, the court accepted the billed amounts as the lodestar on the assumption that the *Johnson* factors have already been applied to justify the unusually high rates and declined to increase that amount by any multiplier.

Plaintiffs filed a motion to modify the judgment and to supplement the record. They attached twenty-one affidavits from Plaintiffs' counsel attesting to the reasonableness of their respective firms' rates; an affidavit from Professor Geoffrey P. Miller, an expert on attorneys' fees in class actions; and an affidavit

3

from Professor Arthur R. Miller, a member of the Advisory Committee on Civil Rules of the Judicial Conference of the United States. At a hearing on the motion to modify, Plaintiffs presented live testimony by Professor Geoffrey Miller and Craig Enoch and submitted an exhibit comparing the rates of Plaintiffs' counsel with other firms in Texas and nationwide. The trial court took no action on Plaintiffs' motion and it was denied by operation of law. The trial court did not file findings of fact and conclusions of law. *See* Tex. R. Civ. P. 42(h)(3). Plaintiffs then filed this appeal.

## II. Standard of Review

In Texas, the amount of an attorneys' fee award in a class action is at the sound discretion of the court, which determines what is reasonable under the circumstances. *See Cnty. of Dallas v. Wiland*, 124 S.W.3d 390, 403 (Tex. App.—Dallas 2003), *rev'd and remanded on other grounds*, 216 S.W.3d 344 (Tex. 2007). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. An abuse of discretion does not occur when the trial court

4

bases its decisions on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

### III. Discussion

In their third issue, Plaintiffs complain that the trial court abused its discretion by failing to apply the lodestar enhancement factors in determining the reasonableness of their request for attorneys' fees.

Texas Rule of Civil Procedure 42(i)(1) states

> In awarding attorney fees, the court must first determine a lodestar figure by multiplying the number of hours reasonably worked times a reasonable hourly rate. The attorney fees award must be in the range of 25% to 400% of the lodestar figure. In making these determinations, the court must consider the factors specified in Rule 1.04(b), Tex. Disciplinary R. Prof. Conduct.

Tex. R. Civ. P. 42(i)(1). Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Tex. Disciplinary Rules Prof'l Conduct R. 1.04(b), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, art. 10 § 9 (West Supp. 2011). The factors are very similar, but not identical, to the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[2]

In its letter, the trial court expressed concern that "many of the hourly rates charged seemed excessive on their face." It stated that in order for the trial court to consider the high rates to be reasonable, "*Johnson* factors would have to be applied to the rates themselves." It then explained that its award of attorneys' fees was "on the assumption that the *Johnson* factors have already been applied" to the lodestar.

---

[2]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19. Plaintiffs' counsel and the trial court refer to the Rule 1.04(b) factors and the *Johnson* factors interchangeably. Because they are so similar, we will do the same and will rely on cases applying the *Johnson* factors.

Texas law is clear that the trial court is required to complete two distinct steps in awarding attorneys' fees. First, the court must calculate the lodestar by multiplying the number of hours reasonably worked by a reasonable hourly rate. Tex. R. Civ. P. 42(i)(1). Some *Johnson* factors may be used to determine the lodestar. *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)). Second, the court must apply a multiplier between .25 and 4.0 based on any *Johnson* factors not already considered in the lodestar. Tex R. Civ. P. 42(i)(1); *see Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied) ("If some of [the *Johnson*] factors are accounted for in the lodestar amount, they should not be considered when making adjustments.").

Considering the record as a whole and the trial court's explanation in its letter, it appears that the trial court did not complete the required steps.[3] Particularly, in view of the clear, direct, and uncontradicted evidence presented in support of the motion to modify the judgment, Plaintiffs met their burden of showing an adjustment was needed to arrive at a reasonable fee. Instead of calculating the lodestar itself based on what it determined to be the reasonable

---

[3]As the dissent points out, the trial court's letter states that it "should not be considered an exhaustive or complete discussion of all considerations given to the Motion for Final Certification prior to the court's ruling thereon," and it was not intended to be findings of facts and conclusions of law. It is, however, the only insight in the record into the court's reasons for its judgment and we consider it for what usefulness it provides.

7

amount of hours worked and a reasonable rate for those hours, and then determining whether the *Johnson* factors warranted an increase or a decrease of that amount, the trial court "assumed" that the *Johnson* factors were accounted for in Plaintiffs' calculation. Although the letter does not make clear what value the trial court placed on each *Johnson* factor, it is clear, after considering the letter in conjunction with the complete record, that the trial court ignored the uncontroverted evidence that (1) the suggested lodestar was calculated without enhancement by the *Johnson* factors and (2) that an enhancement was warranted by the facts of the case. The trial court's assumption was not based on the evidence presented, was without reference to the guiding rules and principles, and resulted in an award that cannot be said to be just.[4] Because the trial court did not follow the steps as articulated in rule 42(i)(1), it abused its discretion by failing to calculate an appropriate lodestar and adjusting it as warranted. *See Forbush v. J.C. Penney Co*., 98 F.3d 817, 823 (5th Cir. 1996) (holding that it would not reverse the decision of a court that fails to discuss a *Johnson* factor "so long as the record clearly indicates that the district court has utilized the *Johnson* framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just

---

[4]Plaintiffs' fourth issue challenges the award as failing to consider the undisputed evidence that the requested amount was reasonable. As we stated above, we agree that the trial court ignored the uncontroverted evidence on the reasonableness of the requested award. Thus, we could alternatively reverse the award on the grounds asserted in Plaintiffs' fourth issue.

compensation") (quoting *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987));

*Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 584 (5th Cir. 1980) (noting that "we should go slow in finding that" a trial judge abused his discretion but holding that "the district court abused its discretion by failing to attach appropriate significance to the *Johnson* criteria most pertinent to reasonable attorneys' fees and by neglecting to develop fully the reasons for his award").

The dissent would have us remand the case for further proceedings. In this case, however, we do not think remand is necessary. *See* Tex. R. App. P. 43.3 ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings . . . ."). The record before us contains all of the affidavits and records submitted in support of the request for attorneys' fees, and the testimony presented was not contradicted by any other witness or attendant circumstances but instead was clear, positive, and free from circumstances tending to cast suspicion thereon. In the interest of judicial economy and our duty to render judgment unless remand is necessary, we review the evidence and render the appropriate judgment. *See id*.; *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (rendering a judgment on attorneys' fees "[i]n the interest of judicial economy"); *see also Louisiana Power & Light Co. v. Kelstrom*, 50 F.3d 319, 325–26 (5th Cir. 1995) (choosing to exercise its option to modify an award of attorneys' fees "[b]ecause the record contains sufficient information to allow a fair determination of a reasonable fee"); *Sidag*

9

*Aktiengesellschaft v. Smoked Foods Prods. Co.*, 960 F.2d 564, 566–67 (5th Cir. 1992) (rendering instead of remanding when sufficient evidence existed in the record because "no useful purpose would be served by further delaying [the case's] final disposition, not to mention exposing the parties and this court to yet [another] appeal").

## A. Calculating the lodestar

The lodestar is calculated by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Dillard Dep't Stores*, 72 S.W.3d at 412; *Guity*, 54 S.W.3d at 528–29. Plaintiffs submitted roughly 7,370 hours at various rates from $200 to $845 per hour for a lodestar of $3,972,367.75. We will review the evidence supporting both the number of hours and the hourly rates requested.

### 1. Hours

With their application for attorneys' fees, Plaintiffs' counsel presented no evidence in the twenty-one attached affidavits by the attorneys that their hours or their rates were reasonable. With their motion to modify, Plaintiffs submitted twenty more affidavits from the attorneys.[5] In all but five of those affidavits, the attorneys testified that the hours spent by their firm on the case were reasonable

---

[5]One firm that had submitted an affidavit with the application did not submit a second affidavit with the motion to modify.

and necessary.[6] All of the firms detailed in their affidavits the tasks that the attorneys accomplished, such as researching, drafting, and filing; reviewing documents; responding to discovery requests; conducting depositions; and negotiating the settlement.

Plaintiffs also submitted the affidavits of expert witness Geoffrey P. Miller.[7] Miller and Craig Enoch also testified at trial. In his affidavit, Miller opined that based on his review of the hours billed by the attorneys, "[t]he hours spent appear reasonable for the tasks accomplished." He further stated, "Considering the huge amount of work done as described in the submissions in support of the fee application, this time is, in my experience, consistent with the time needed to properly litigate a case of this type and magnitude." He noted that "expertise of the Plaintiffs' firms contributed to efficiency and reduced hours" and that,

> Where practical and appropriate, work appears to have been performed by associates, paralegals[,] and law clerks. By far, the overwhelming bulk of the work was done by attorneys with the appropriate, but not excessive, seniority to handle level-appropriate aspects of the Actions. In sum, based on my review of the affidavits of counsel submitted with the Final Approval Motion and wit[h] this Motion, my analysis indicates that Plaintiffs' counsel put in the time necessary to achieve a successful result but did so in an efficient manner.

---

[6]Of the 7,369.9 hours submitted, the number of hours without direct testimony supporting their reasonableness and necessity equaled 386.35, or 5.2% of the total hours submitted.

[7]Plaintiffs also submitted the affidavit of expert witness Arthur R. Miller. Arthur Miller, however, did not state an opinion specifically as to the reasonableness or necessity of the hours billed.

At trial, Miller testified again that the hours billed were reasonable in light of the "extraordinary intensity of the litigation." Enoch also testified at trial that the hours billed were reasonable.

Plaintiffs provided evidence, by way of expert testimony, that the hours billed were reasonable and necessary. And although neither Miller nor Enoch reviewed line by line each task billed, Texas courts have repeatedly held that an itemized bill is not necessary to support an award of attorneys' fees. *La Ventana Ranch Owners' Ass'n v. Davis*, No. 03-09-00452-CV, --- S.W.3d ---, 2011 WL 2162886, at *16 (Tex. App.—Austin June 3, 2011, no pet.) (holding that the evidence was factually sufficient to establish the reasonableness of the time spent "[e]ven without an itemized billing statement or testimony regarding the reasonableness and necessity of the amount of time spent on each particular task" when the attorney and an expert witness testified that the amount was reasonable and the attorney listed the various tasks he accomplished); *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 898 (Tex. App.—Dallas 2003, no pet.) (upholding fee award absent any itemized billing statement based solely on attorney's testimony regarding his customary hourly rate, total hours spent on the case, his experience and expertise, and complexity of the case). There is thus sufficient evidence before us to determine that the number of hours billed were reasonable.

Plaintiffs stated in their application for attorneys' fees that the total amount of hours equaled 7,369.55. However, in adding up the hours listed in the

affidavits, we arrived at 7,369.9 total hours submitted. In examining the amounts submitted, we discovered two additional errors. First, one attorney at Baron & Budd, P.C. submitted 47.25 hours at a rate of $700 per hour (a total of $33,075 in fees), but requested only $23,100, which would be the correct fee for 33 hours of work. Second, an attorney at Grant & Eishenhofer, P.A. submitted 592.8 hours at $295 per hour (a total of $174,876 in fees) but requested only $174,787.50, which would be the correct fee for 592.5 hours of work. Because it is unclear that the higher number of hours for the two attorneys is appropriate, we hold there is support for 7,355.3 hours of work reasonably expended. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991) (noting that as a general rule, a party seeking to recover attorney's fees carries the burden of proof to establish that it is entitled to them).

### 2. Rates

All twenty-one of the attorneys' affidavits attached to the original application for attorneys' fees stated merely that the rates requested were the firms' "regular rates that [the] firm[s] charge[] both hourly clients and contingent clients alike for [their] services."[8] In the twenty affidavits submitted with their motion to modify, all but six attorneys testified that the rates charged by their firm

---

[8]All of the affidavits in which a firm requested expenses also contained the same language that their expenses were "reasonable under the circumstances and were necessary to achieve the settlement reached in this case." The trial judge awarded all of the requested $188,355.66 in expenses. The Plaintiffs do not contest that part of the award.

were reasonable in comparison with the rates charged for similar work in their communities. Although the customary fees charged in the local legal community for similar legal services is helpful in determining the reasonableness of the fees requested, it is not fatal to an attorney's application for fees if it is not included. *See In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.) (noting that a trial court is not required to receive evidence of each of the factors that should be considered in determining the reasonableness of an award of attorneys' fees); *Burnside Air Conditioning & Heating*, 113 S.W.3d at 897–98 (same). All of the rates charged by those six firms fall within the range of hourly rates charged by other attorneys in this case with similar experience. Four firms also noted that their rates have been approved by other Texas courts. One affiant attached The National Law Journal's survey of firm billing rates for 2007, 2008, and 2009, which showed that all of the rates requested were within the range of rates billed by other firms in their state. Further, in their motion for reconsideration, Plaintiffs cite a number of cases demonstrating that the high rates for the New York law firms were not out of line with the customary rates of the area. *See In re Comverse Tech*. *Secs. Litig.*, No. 06-CV-1825(NGG)(RER), 2010 WL 2653354, at *4 (E.D.N.Y. Jun. 24, 2010) (noting hourly rates from $125 to $880); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (hourly rates of $125 to $775); *In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 589–90 (S.D.N.Y. 2008) (hourly rates of $300 to $750); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510(CPS)(SMG), 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18,

14

2007) (hourly rates of $325 to $725); *In re Merrill Lynch & Co. Research Reports Secs. Litig.*, No. 02-MDL-1484(JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $515 to $850).

Enoch testified at the hearing that the rates charged by the attorneys in this case were "eminently reasonable" based on "the quality of the lawyers that are in this representation here and my familiarity with the fees that are generally charged for this type of complex litigation." He testified that he saw no "bonus or premium embedded" in the rates charged by the attorneys. Geoffrey Miller opined in his affidavit that "the rates charged by Plaintiffs' counsel in the three actions are commensurate with the rates prevailing in their respective communities for attorneys who practice in the same areas in which these attorneys specialize or concentrate." Miller noted that the average hourly rate requested in this case was $539 per hour for all attorneys and compared that to a study that "found that the average hourly rate based on attorneys' fees awarded in 277 securities cases settled from 1973 to 2003 was $1,370 in 2003 dollars." We therefore hold that the rates submitted by the attorneys in this case are reasonable.

### 3. Lodestar

As discussed above, we hold that a reasonable number of hours expended in this litigation is 7,355.3. Multiplying the hours by the respective rates submitted by the attorneys results in a lodestar of $3,968,277.25.[9]

## B. Applying a multiplier

Once the lodestar is calculated, rule 42(i)(1) requires the court to award an amount "in the range of 25% to 400% of the lodestar figure." Tex. R. Civ. P. 42(i)(1). Plaintiffs requested an award of 217% of the lodestar. In determining whether this is a reasonable award, the court is required to consider the factors listed in Texas Disciplinary Rule of Professional Conduct 1.04(b). *Id*.

### 1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly

Enoch testified at the hearing on Plaintiffs' motion to modify that he believed a multiplier should be used in this case because the "intensity of the issue" called for a lot of time and labor. Geoffrey Miller testified that the "Actions involved a plethora of difficult, unsettled, and novel issues of law." He opined, "[T]here can be no question that the magnitude, complexity and novelty of the issues presented in this litigation favor a substantial risk multiplier." Miller also

---

[9]The attorney at The Briscoe Law Firm, PLLC submitted 45.25 hours at $525 (a total of $23,756.25 in fees) but requested $27,756.25 in fees. We see no justification for the additional $4,000. *See Stewart Title Guar. Co.*, 822 S.W.2d at 10.

16

testified to the added risks of a class action such as getting class certification. From his research he concluded that

> Multipliers in securities actions tend to be higher than multipliers in statutory fee-shifting or other types of less complex or costly class actions. This fact reflects reality that cases pursued on a class basis are among the most difficult to litigate, require a high degree of sophistication, are defended invariably by capable and sophisticated law firms, and involve risks in terms of dedication of resources, expenditure of time and potential for non-payment.

**2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer**

Enoch described this type of fast-paced litigation as "all-hands-on-deck" and noted that the document-intensive discovery and short deadlines means that "when someone is asking you to do this[,] they recognize they're calling on all your people to be available on this one item or this one project."

**3. The fee customarily charged in the locality for similar legal services**

As noted above, the hourly rates charged by the attorneys in this case are within the range of rates charged by other attorneys in their respective localities. We do note that the rates charged in some of the larger markets, such as New York, are higher than those charged in Tarrant County.

**4. The amount involved and the results obtained**

In his affidavit, expert witness Arthur Miller testified that that the results that Plaintiffs' counsel obtained were excellent. He believed that the supplemental disclosures that resulted from the litigation provided vital information to the

17

Plaintiffs and supported the requested attorneys' fee award. He noted that discovery in this case revealed that the defendant companies had not provided the financial advisor who was responsible for valuing XTO and opining on the fairness of the merger with all the necessary documents to make a fully-informed opinion, and he detailed the value of the information gleaned from the litigation in his fifteen-page affidavit. Miller also noted that in his research he found only one other instance of plaintiffs' counsel "achieving a similar type and level of disclosure." That case was a New York case concerning a $9 billion merger and the attorneys' fee award was $8.5 million. The merger that formed the basis of this litigation was valued at $41 billion—as Geoffrey Miller described it, "one of the most important mergers in American history." Enoch testified, "The results being sought [were] to assure full, accurate information. It seemed to me that was a very good result here, and that's a positive." Enoch testified that the value of the disclosures was significant and went on,

> But it seems to me there was even greater benefit here, where the specialist, the financial advisers that were advising on the deal, were directed to consider further information and then report on that. It seems to me it says—it's greatly valuable to have the confirmation. . . . So it seemed to me this was tremendously beneficial in the concept of what this is all about, which is to make sure the voters are informed at the time they're casting their vote.

In William Kelly Puls's affidavit attached to the application for attorneys' fees, he noted that "overwhelmingly positive reaction of the Class members to date further illustrates the excellence of the Settlement." Plaintiffs' counsel

18

estimated the percentage of class members who objected to the settlement to be roughly .002 percent.

**5. The time limitations imposed by the client or by the circumstances**

Because Plaintiffs filed for a temporary injunction to halt an upcoming vote by the XTO shareholders on the merger, the parties to this case agreed on an expedited discovery schedule. In the roughly four months of discovery, Plaintiffs' attorneys reviewed hundreds of thousands of pages of public filings, financial analyst reports, business media articles, and about 65,000 pages of confidential documents. At the hearing, Enoch testified that this kind of intensive document review is stressful and time consuming. He described cases with a short deadline and complex issues as "all-hands-on-deck and it's full speed ahead for a very short period of time." Geoffrey Miller opined that highly compressed timelines "strongly favor[] a substantial lodestar enhancement."

**6. The nature and length of the professional relationship with the client**

This was a contingency fee case in which Plaintiffs' attorneys represented a large class of shareholders who held approximately 584 million shares of XTO stock. 179,618 copies of notice of the suit were mailed to potential class members. As Geoffrey Miller opined,

> Unlike hourly billing attorneys, there was little likelihood that Plaintiffs' counsel would be retained on an hourly basis by members of the plaintiff class based on their representation of the class in a class action. Thus the concept of undertaking a potentially less economically beneficial retention as a "loss leader" plays no role in cases such as this.

19

### 7. The experience, reputation, and ability of the lawyer or lawyers performing the services

With ninety different attorneys performing work on this case, the amount of experience and ability will naturally vary. Some of the senior partners had thirty or forty years of experience. There were also young associates with little experience. Overall, there were many firms with good reputations and national practices. Enoch testified that this factor "gets a lot of weight from me. . . . You're talking about pretty significant litigation. . . . [I]t's a significant transaction. . . . [T]he quality of the lawyer in here is a critical piece of it, and that should get a positive." Geoffrey Miller testified that the favorable settlement "evidences the superior quality of their work."

### 8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered

Geoffrey Miller stated in his affidavit, "The contingent nature of the fee arrangement is, without doubt, the most important factor in a lodestar/multiplier analysis." All of the firms' fees were on a fully contingent basis. Enoch noted, "[T]here is a recognition of an additional value for the services performed in exchange for running the risk that there [will] be no recovery at all." Increasing the lodestar for contingent work, he said, is "about trying to attract quality lawyers to work in this field and assure that their risk is carefully accounted for." He testified, "[T]he straight lodestar does not take into account the risk, the evaluation of the . . . economic value of the lawyer taking on the risk of not being

paid at all." All of the attorneys testified that the hourly rates they submitted were the "regular rates that [the] firm[s] charge[] both hourly clients and contingent clients alike." *See El Apple I, Ltd. v. Olivas*, 324 S.W.3d 181, 193–94 (Tex. App.—El Paso 2010, pet. granted) (upholding the application of a multiplier based in part on the contingent nature of the fee "[b]ecause there is no indication the trial court considered the contingency factor more than once in its calculation" when the attorneys testified that they did not adjust their hourly fee because of the contingent nature of the case). We also note that Texas courts consistently allow the use of a multiplier based upon the contingent nature of a fee under Texas statutes allowing recovery of attorney's fees. *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 783 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *Dillard Dept Stores*, 72 S.W.3d at 412; *Guity*, 54 S.W.3d at 529; *Borg-Warner Protective Servs. v. Flores*, 955 S.W.2d 861, 870 (Tex. App.—Corpus Christi 1997, no pet.); *Crouch v. Tenneco*, 853 S.W.2d 643, 648 (Tex. App.—Waco 1993, writ denied).

Miller also opined that "Plaintiffs' counsel was entitled to a substantial risk multiplier for their efforts in the Actions" and that the requested multiplier "is both fair and reasonable under the law of Texas and under the circumstances of the Actions." In his opinion, a multiplier of 2.17 is "eminently fair based on how the courts generally handle cases of this type" and that even a multiplier "at or near the upper limit . . . would not have been unreasonable." A multiplier of 2.17 is not unusual in large, complex, and expedited cases. *See Dillard Dep't Stores*, 72

S.W.3d at 413 (upholding a multiplier of 2 based on the novelty and difficulty of the issues, the contingent nature of the fee, the time limitations imposed by the circumstances, and the preclusion of other employment); *Flores*, 955 S.W.2d at 870 (upholding use of a 1.5 multiplier when plaintiff prevailed on all issues and "was required to pierce numerous layers of corporate bureaucracy in order to bring her case to trial").

The trial court ordered attorneys' fees paid in the amount of the unenhanced lodestar based on the assumption that the *Johnson* factors were applied in justifying the hourly rates requested. The unenhanced lodestar does not reflect the exceptional results achieved by Plaintiffs' counsel, the undesirability of this litigation, the high risk borne by its contingent nature, or the fact that the fee award requested is comparable to that awarded in similar class action litigation, all of which were directly established by uncontradicted evidence. The court was obligated to consider the adjustment based on that evidence and the *Johnson* factors, and it was an abuse of discretion to fail to do so based on an unsubstantiated assumption. We hold that the requested multiplier of 2.17 is appropriate in this case. The lodestar of $3,968,277.25 multiplied by 2.17 equals an award of $8,611,161.63, which we hold to be an appropriate and reasonable award.

Because we sustain Plaintiffs' third issue and because we have determined an appropriate award of attorneys' fees, we need not reach the rest of Plaintiffs' issues. *See* Tex. R. App. P. 47.1.

## Conclusion

Having sustained Plaintiffs' third issue and holding that we do not need to reach their other issues, we modify the trial court's award of attorneys' fees to be $8,611,161.63 and affirm the trial court's judgment as modified.

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

MEIER, J., filed a dissenting opinion.

DELIVERED:  February 9, 2012

23



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00483-CV

WILLIAM D. STRATTON                                                      APPELLANT

V.

XTO ENERGY INC., BOB R.                                                  APPELLEES
SIMPSON, WILLIAM H. ADAMS III,
LANE G. COLLINS, PHILLIP R.
KEVIL, JACK P. RANDALL, SCOTT
G. SHERMAN, HERBERT D.
SIMONS, KEITH A. HUTTON,
VAUGHN O. VENNERBERG II,
LOUIS G. BALDWIN, TIMOTHY L.
PETRUS, GARY D. SIMPSON,
EXXON MOBIL CORPORATION,
AND EXXON MOBIL INVESTMENT
CORPORATION

----------

### FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

[1]*See* Tex. R. App. P. 47.4.

The lynchpin of the majority opinion states "it appears that the trial court did not complete the required steps." Because I would treat the October 8, 2010 letter as nothing more than what the trial court stated in the opening paragraph of the letter—"This letter attempts to clarify some of the reasons for the court's ruling, but it should not be considered an exhaustive or complete discussion of all considerations given to the Motion for Final Certification prior to the court's ruling thereon."—I do not read the letter to support an appellate ruling that "the trial court did not complete the required steps." To the extent that we permit the trial court's letter to function as rule of civil procedure 42(h)(3) findings of fact and conclusions of law, reviewing the letter in its entirety—instead of considering one short phrase contained within the letter in isolation—reveals that the trial court declined to adjust the presumptively reasonable lodestar because it had already accounted for relevant *Johnson* factors in determining the lodestar. For these reasons, I dissent.

Our rules of civil procedure contain detailed requirements for class action lawsuits, including procedures for determining an award of attorneys' fees. *See* Tex. R. Civ. P. 42(h). After a motion for attorneys' fees and a hearing, "[t]he [trial] court *must* state its findings and conclusions in writing or orally on the record." Tex. R. Civ. P. 42(h)(3) (emphasis added). Rule 42 "is patterned after Federal Rule of Civil Procedure 23; consequently, federal decisions and authorities interpreting current federal class action requirements are persuasive authority." *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). Federal rule

2

of civil procedure 23(h)(3) provides that the trial court may hold a hearing on attorneys' fees in a class action suit but, similar to our rules, "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h)(3). The Fifth Circuit requires that "[w]hen a district court awards attorneys' fees it must explain how each of the *Johnson* factors affects its award." *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008). "[T]he district court's findings and reasons must be 'complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation.'" *Id.* at 229 (citing *Brantley v. Surles*, 804 F.2d 321, 325–26 (5th Cir. 1986)).

The trial court's October 8, 2010 letter specifically warns at the outset that it "attempts to clarify some of the reasons for the court's ruling, but it should not be considered an exhaustive or complete discussion of all considerations given to the Motion for Final Certification prior to the court's ruling thereon." Thus, on its face, the letter purports to acknowledge its own inherent incompleteness.[2] The trial court did not explain how each of the *Johnson* factors affected its award, and we are left to speculate as to the findings that are not contained in the letter. As an appellate court reviewing an award of attorneys' fees in a complex class action suit involving "one of the largest mergers in U.S. history," we should not follow the analysis advocated by Stratton in his third issue and rely upon the

---

[2]The majority even seems to acknowledge this.

3

incomplete letter as a substitute for rule 42(h)(3) findings and conclusions. This is because, unless the trial court provides a reasonably specific explanation of the fee determination, "adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced . . . by a judge's subjective opinion regarding particular attorneys or the importance of the case." *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676 (2010). The trial court's letter meets neither the Supreme Court's nor the Fifth Circuit's standards for explaining an award of attorneys' fees. Accordingly, I would either abate this appeal and remand the case to the trial court for entry of findings and conclusions as required by rule 42(h)(3) or reverse the trial court's judgment as to attorneys' fees and remand the case for further proceedings.

To the extent that we construe the October 8, 2010 letter as sufficiently identifying the trial court's findings and conclusions and proceed to address Stratton's third issue, the trial court did not abuse its discretion by awarding attorneys' fees in the amount of $3,972,367.75. The lodestar creates a presumptively reasonable fee. *Id.* at 1673. "While the lodestar is relevant to determining a fee award, it is not the sole basis for determining that award; the *Johnson* factors are applicable to deciding whether the lodestar is reasonable, as well as to adjusting that award by a multiplier once the lodestar is calculated." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008); *see Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9, 103 S. Ct. 1933,

4

1940 n.9 (1983) ("The district court also may consider other factors identified in [*Johnson*] though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). Indeed, four of the *Johnson* factors are presumably included in the lodestar calculation (the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation), and the Fifth Circuit has reasoned that two other factors are generally subsumed in the lodestar (the time limitations and the circumstances and preclusion of other employment). *See Enron Corp.*, 586 F. Supp. 2d at 756–57 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 321–22 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993)); *see also Perdue*, 130 S. Ct. at 1673 (reasoning that the "lodestar includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee"). The time and labor involved and the customary fee may also be considered in calculating the lodestar. *See, e.g., Nassar v. Univ. of Tex. Sw. Med. Ctr.*, No. 3:08-CV-1337-B, 2010 WL 3000877, at *6 (N.D. Tex. July 27, 2010) (mem. op.). But while these factors may be considered in calculating the lodestar, it is well established that the lodestar may not be adjusted in consideration of a *Johnson* factor if that factor was already accounted for in arriving at the lodestar; "to do so would be impermissible double counting."[3]

---

[3]An upward adjustment of the lodestar based on factors that are presumably included in the lodestar amount is still permissible, but "such modifications are proper only in certain rare and exceptional cases supported by

5

*Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006); *see Perdue*, 130 S. Ct. at 1673 (recognizing that the Court has "held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation").

The trial court concluded its letter by stating that it had "accepted the billed amounts as the lodestar on the assumption that the *Johnson* factors have already been applied." From this snippet, the majority concludes that "it appears that the trial court did not complete the required steps" because the trial court "'assumed' that the *Johnson* factors were accounted for in Plaintiffs' calculations." Maj. Op. at 7. This is a misconstruction of the letter and of the trial court's attorneys' fees award. The mistake made by the majority is that it construes the letter's final sentence in isolation and apart from the remainder of the letter, which unambiguously indicates that the trial court had numerous concerns about the reasonableness of both the rates charged and the hours expended by the plaintiffs' attorneys. After explaining some of its concerns about the rates and hours, the trial court stated,

> Texas law seems clear that when *Johnson* factors are already accounted for in determining the reasonable rates (the lodestar amount), they should not again be considered when making adjustments. To rely on *Johnson* factors both to justify high rates and to justify the application of a multiplier would result in a duplicative award of fees.

---

both specific evidence on the record and detailed findings by the lower courts." *Shipes*, 987 F.2d at 320.

6

At the request of Stratton, the trial court conducted an exhaustive hearing on December 17, 2010, and thereafter declined to modify the original Order and Final Judgment.

Considering the letter as a whole, the trial court did not decline to adjust the lodestar because it merely "assumed" that the *Johnson* factors had already been accounted for in the lodestar; rather, it did take into account certain *Johnson* factors—and possibly all of the *Johnson* factors—in arriving at the presumptively reasonable lodestar and then either (1) refused to double count those same factors in considering a multiplier or (2) considered certain *Johnson* factors not addressed in calculating the lodestar as irrelevant for purposes of the multiplier. The trial court's inaction after permitting Stratton to supplement the record—thus maintaining an award of 100% of the lodestar, an amount within the range prescribed by rule 42(i)(1)—supports this conclusion. In light of the introductory warning that the letter was meant to clarify only "some of the reasons for the court's ruling," we have no way of knowing what *Johnson* factors, if not all of them, were considered in calculating the lodestar and what factors, if any, the trial court thought were irrelevant in considering a multiplier. What evidence we do have, however, does not demonstrate an abuse of discretion. Accordingly, to the extent that we address Stratton's third issue, I would affirm the trial court's judgment.

For the foregoing reasons, I respectfully dissent.

BILL MEIER
JUSTICE

DELIVERED:  February 9, 2012